# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00837-CV

**Diana Foster, Appellant**

v.

**Teacher Retirement System, Trustee for Texas Public Retired School Employees Group Insurance Program; Aetna Life Insurance Company; and Aetna Health Management, LLC, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. GN500321, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

## **O P I N I O N**

Appellant Diana Foster is a retired teacher insured through the Teacher Retirement System of Texas ("TRS"), a state agency. Pursuant to a contract with TRS, the insurance plan was administered by Aetna Life Insurance Company and Aetna Health Management, LLC (collectively, "Aetna"). In late 2003 and early 2004, Foster was prescribed intravenous immune globulin infusion therapy ("IVIG"). She went to Quality Infusion Services for the treatment, and Quality Infusion sought pre-certification of the treatment. Aetna denied coverage, stating that Quality Infusion was not an in-network provider and that IVIG treatment was not medically necessary for Foster. Quality Infusion performed the treatment, but when billed, Aetna denied the claims.

Foster and Quality Infusion sued appellees, asserting claims for breach of contract, breach of the duty of good faith and fair dealing, violations of the insurance code, and violations of

the deceptive trade practices act. They also, "as interested persons under the insurance policy," requested a declaratory judgment "determining their rights to, and awarding them full recovery of their claims under the insurance policy." In their prayer for relief, Foster and Quality Infusion asked that judgment be entered against appellees for actual damages, exemplary and additional damages, penalties under the insurance code, pre- and post-judgment interest, attorney's fees, and costs of court. Appellees filed pleas to the jurisdiction, which the trial court granted, dismissing the lawsuit without prejudice. Foster appealed to this Court; Quality Infusion did not.

Foster raises five points of error, complaining that her declaratory judgment claim was not barred by sovereign immunity; that the legislature had waived appellees' immunity; that the administrative procedures act provided for judicial review of appellees' adverse determination of her insurance claims; that Aetna is not protected by sovereign immunity; and that the court should have stayed the proceeding to allow Foster to seek the legislature's permission to sue rather than dismissing the suit. We affirm.

In her first issue, Foster argues that her declaratory judgment claim was not barred by sovereign immunity. It is true that "certain declaratory-judgment actions . . . do not implicate the sovereign-immunity doctrine." *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). However, "declaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State" and "cannot be maintained without legislative permission." *Id.* at 855-56; *see McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet.

2

denied) (suit that seeks to control State's exercise of discretion within its legal authority is suit to control state action and cannot be maintained without legislative permission).

First, we note that Foster's petition made only brief reference to the declaratory relief sought, saying that she sought a declaration "determining [her] rights to, and awarding [her] full recovery of [her] claims under the insurance policy," and her prayer did not refer to declaratory relief and asked only for monetary damages and fines. Further, the declaratory relief claim did not assert that TRS and Aetna acted without legal or statutory authority and instead sought to "impose contractual liabilities" against TRS and Aetna. *See IT-Davy*, 74 S.W.3d at 855-56. Thus, Foster's claim for declaratory relief sought to control the State's actions and was barred absent express legislative consent. We overrule Foster's first issue on appeal.

In her second issue, Foster argues that the legislature waived TRS's immunity in chapter 1575 of the insurance code, which allows TRS to adopt rules and procedures necessary to implement insurance coverage for retired school employees. *See* Tex. Ins. Code Ann. § 1575.052(a) (West Supp. 2008). She asserts that the enabling language "encompasses a waiver of immunity," arguing that the legislature empowered TRS to establish benefits plans and develop procedures to administer claims and that "[o]ne procedure for administering claims is legal action for judicial review of claims denials and for enforcement of the benefits." As evidence of the waiver of TRS's immunity, she points to TRS's contract with Aetna, which provides that TRS will pay "the amount of Plan benefits included in any judgment or settlement with respect to a lawsuit involving a claim for Plan benefits," and the insurance plan's 2003 booklet, which states that "[n]o legal action can be brought to recover under any benefit before the end of 60 days after written proof of loss has been

3

required to be furnished." These provisions, Foster contends, show TRS's understanding that its immunity was waived by chapter 1575 of the insurance code. We disagree.

"[I]t is the Legislature's sole province to waive or abrogate sovereign immunity." *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997)); *see IT-Davy*, 74 S.W.3d at 853. "The Legislature may consent to suits against the State by statute or by resolution," but the waiver of immunity "must be expressed in 'clear and unambiguous language.'" *IT-Davy*, 74 S.W.3d at 853-54 (quoting Tex. Gov't Code Ann. § 311.034 (West Supp. 2008)). Provisions allowing an agency to "sue and be sued" or "plead and implead" do not waive sovereign immunity from suit. *See Trend Offset Printing Servs., Inc. v. Collin County Cmty. Coll. Dist.*, 249 S.W.3d 429, 430 (Tex. 2008); *Tooke v. City of Mexia*, 197 S.W.3d 325, 342 (Tex. 2006). Thus, the statutory language on which Foster relies does not waive TRS's immunity from suit, and even if the language in the contract or plan booklet could be read as a clear and unambiguous waiver, appellees cannot waive immunity on behalf of the legislature. *See Federal Sign*, 951 S.W.2d at 409. We overrule Foster's second issue.

In her third issue, Foster argues that the APA provides for judicial review of her benefits dispute. She characterizes her dispute with appellees as a contested case that resulted in an adverse determination by a state agency.

"A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." Tex. Gov't Code Ann. § 2001.171 (West 2008). A contested case is a proceeding "in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing." *Id*. § 2001.003(1) (West 2008). When an

4

agency's enabling language does not specifically authorize or prohibit judicial review, "the APA creates an independent right to judicial review for those who satisfy [section 2001.171]'s threshold requirements." *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 196-97 (Tex. 2004). However, "absent express statutory authority, the APA does not independently provide a right to a contested case hearing." *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 123 (Tex. App.—Austin 2007, no pet.).

"In order to be a contested case under the APA definition, an administrative proceeding must be one in which the legal rights, duties, or privileges of a party '*are to be determined* by a state agency *after an opportunity for adjudicative hearing*'"; "[b]y 'adjudicative hearing,' we think the legislature meant a hearing at which the decision-making agency hears evidence and, based on that evidence and acting in a judicial or quasi-judicial capacity, determines the rights, duties, or privileges of parties before it." *Best & Co. v. Texas State Bd. of Plumbing Exam'rs*, 927 S.W.2d 306, 309 & n.1 (Tex. App.—Austin 1996, writ denied) (quoting APA § 2001.003(1)). We have "reject[ed] a proposed construction of the definition that would require an agency to follow contested-case procedures any time rights, duties, or privileges of a party are determined, without regard to whether an adjudicative hearing is required or provided." *Id.* at 309. "Texas law recognizes no right to judicial review of an administrative order unless (1) a statute provides the right, (2) the order adversely affects a vested property right, or (3) the order otherwise violates some constitutional right." *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 599 (Tex. 2001). Thus, "when an act is either silent on the question of appeal or expressly denies a right to appeal, a party may appeal only 'where the administrative action complained of

5

violates a constitutional provision.'" *Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007) (quoting *City of Amarillo v. Hancock*, 239 S.W.2d 788, 790 (Tex. 1951)).

The insurance code allows TRS to adopt rules and procedures necessary to administer benefits programs for employees and retirees. Tex. Ins. Code Ann. § 1575.052(a). Under the provisions of the administration code governing health care and insurance for active employees and retirees, *see* 34 Tex. Admin. Code §§ 41.1-.14, 41.30-.52 (2008), the plan for retired teachers, TRS-CARE, is governed by different rules than the plan for active employees, TRS-ACTIVECARE. The subchapter governing TRS-ACTIVECARE provides for appeals related to health care claims. *See id.* § 41.50 (claimant must complete administrator's appeal process, then appeal to TRS committee, and then may seek review by executive director). The provisions governing TRS-CARE, however, do not allow for appeals from denial of claims. *See id.* §§ 41.1-.14. Chapter 23, titled, "Administrative Procedures," includes a more general provision stating that a person who has "a complaint regarding the delivery of services" by TRS may submit her complaint to the designated TRS Complaint Officer. *Id.* § 23.1 (2008).

Foster did not plead that there were any constitutional violations in appellees' denial of her claims for IVIG treatment,[1] nor did she state in her petition that she was seeking judicial

---

[1] Foster argues on appeal that denying her judicial review of her claim would be a violation of her due process rights. *See* U.S. Const. amend. XIV; Tex. Const. art. I, § 19. However, she did not assert due process violations before the trial court. Further, she has not shown that she was deprived of a "protected property right, as distinguished from a mere privilege or expectation." *See Nelson v. Clements*, 831 S.W.2d 587, 591 (Tex. App.—Austin 1992, writ denied) ("person has a constitutionally protected property interest in a benefit only if the person has a legitimate claim to its entitlement," and state employee seeking reimbursement for travel expenses had at most "an expectation" of approval but "not a constitutionally protected property interest giving rise to due process requirements").

review of a decision in a contested administrative case or that she had exhausted her administrative remedies.[2] The statutes and administrative code provisions applicable to retiree medical coverage do not provide for a contested case or judicial review. *See Ferrell*, 248 S.W.3d at 158; *Little-Tex Insulation Co.*, 39 S.W.3d at 599. Thus, Foster has not shown that the APA applies to her claims. We overrule her third point of error.

In her fourth point, Foster argues that because the Aetna parties are private entities, they are not shielded by sovereign immunity. However, Aetna was functioning as an agent for TRS, which is a State agency. Under the contract with TRS, Aetna agreed to act as plan administrator, with "discretionary authority" to carry out its duties and the "exclusive right to interpret the terms of the Plan and to determine eligibility." The contract further provided that Aetna's "good faith interpretation shall be binding and conclusive upon all persons" and that the Plan is "funded exclusively from the assets of" the Texas Public School Employees Group Insurance Fund, which is a trust established and maintained by the State and paid into by the State or state agencies. The contract provides that Aetna, "in performing its obligations under this Contract, is acting only as agent of" TRS and that Aetna is a "fiduciary solely for benefit determination and review of denied claims." Aetna agreed to indemnify TRS against any claims resulting from dishonest, fraudulent,

---

[2] In her response to appellees' pleas to the jurisdiction, Foster stated that she had exhausted all available administrative remedies and that she was thus entitled to judicial review of a final decision. However, she did not make such an assertion in her petition except to say that the APA was applicable "by entitling [Foster] to seek judicial review of Defendant's denial of Mrs. Foster's claim for benefits." Further, Foster did not state in her response or her petition that she had filed a complaint either pursuant to the provisions governing the appeal from the denial of an insurance claim submitted by an active employee, *see* Tex. Admin. Code § 41.50 (2008), or under the general complaint provision in section 23.1, *see id.* § 23.1 (2008) (person with complaint related to TRS's provision of services may submit complaint to designated complaint officer).

or criminal acts by Aetna's employees or from any losses or obligations that are determined by a court or by mutual agreement by TRS and Aetna to be the result of Aetna's employees providing contractual services that did not comply with the law or with the standard of ordinary care and reasonable diligence. Except for those provisions, TRS agreed to indemnify Aetna for any other losses or obligations incurred by Aetna in connection with its actions under the contract.

All of Foster's claims make essentially the same argument—that the services provided by Quality Infusion should have been covered under the terms of her insurance plan. She does not allege unlawful acts by Aetna or its employees, only that Aetna should have found her claims to be covered under the policy. Except for a breach of contract claim brought solely against TRS, Foster does not distinguish between Aetna and TRS; her claims against Aetna are also brought against TRS. Aetna's involvement in this matter arises solely out of its actions on behalf of TRS.

TRS acted within its authority in contracting with Aetna for the administration of its insurance plans. *See* Tex. Ins. Code Ann. §§ 1575.051 (TRS "shall take the actions it considers necessary" to administer group insurance program), .052 (TRS has authority to make rules, orders, procedures reasonably necessary to provide insurance coverage), .108 (TRS may engage private entity to collect contributions or settle claims in connection with insurance plan) (West Supp. 2008). Foster does not dispute that TRS had the power to contract with Aetna to administer the plan. Although the contract provides that Aetna has discretion to make coverage decisions, the contract also specifies that Aetna functions as an agent for TRS; that Aetna acts in a fiduciary capacity in its administration of the plans; that all funds paid on claims are state funds; that Aetna will not be liable for payment on any claims; and that TRS has agreed to indemnify Aetna for any obligations arising out of its good-faith performance under the contract.

8

Based on the contract between Aetna and TRS, Aetna's role is comparable to the "fiduciary intermediaries" in federal cases discussing immunity under the Eleventh Amendment. Under federal case law, a private company is protected by Eleventh Amendment immunity if the suit amounts to one seeking to recover money from the state. *St. Joseph Hosp. v. Electronic Data Sys. Corp.*, 573 F. Supp. 443, 449 (S.D. Tex. 1983) (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945)); *see Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1311-12 (11th Cir. 2000) ("The dispositive question for Eleventh Amendment purposes is whether a judgment against [private companies] would implicate the state treasury or interfere with the administration of the state group insurance program, or whether the claims constitute a private cause of action, arising out of tort or contract, for which [private companies] would be financially responsible."); *see also United States ex rel. Barron v. Deloitte & Touche, L.L.P.*, 381 F.3d 438, 440-42 (5th Cir. 2004) (discussing test for whether company is "arm of the state" and whether suit seeks to impose liability that will be paid by public funds) (quoting *Hudson v. City of New Orleans*, 174 F.3d 677, 679, 681 (5th Cir. 1999)). An entity that serves only to administer a healthcare plan has no financial stake in whether a claim is paid or denied, and a fiscal intermediary is protected from third-party suits related to [its] administrative responsibilities" through an indemnity clause in its contract with the government. *United States ex rel. Reagan v. East Tex. Med. Ctr. Reg'l Healthcare Sys.*, No. H-97-3310, 2002 U.S. Dist. LEXIS 26847, at *18 (S.D. Tex. Sept. 6, 2002) (memorandum and recommendation by magistrate judge, adopted by district court) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 73 (2d Cir. 1998)). Suits related to a fiscal intermediary's administration of a government healthcare plan that only complain of actions within

the intermediary's duties are barred under the Eleventh Amendment. *Id.* at \*20-22. Only if the plaintiff alleges actions that were criminal, fraudulent, grossly negligent, or "otherwise clearly outside the scope of its delegated authority, then the intermediary may not be entitled to the immunity it seeks." *Id.* at \*21-22. "To show that [a fiscal intermediary] acted outside the scope of its delegated authority, something more than mere negligence or breach of contract must be alleged." *Id.* at \*27; *see also Matranga v. Travelers Ins. Co.*, 563 F.2d 677, 677-78 (5th Cir. 1977); *St. Joseph Hosp.*, 573 F. Supp. at 449-50.

Under the contract, Aetna simply provides administrative services to facilitate the provision of health care to retirees covered by TRS. The insurance plan is fully funded by the State, and Aetna has no financial stake in the approval or denial of a claim. *See Reagan*, 2002 U.S. Dist. LEXIS 26847, at \*18. TRS has the exclusive right to determine the terms of the plan and may amend or terminate the plan at any time. In relation to Foster's claims, Aetna was acting as an agent of TRS and in a fiduciary capacity for the benefit of the State, and Foster has not alleged that Aetna exceeded the scope of its delegated duty of determining claim coverage or committed fraud or a similar tort. Thus, TRS's immunity should protect Aetna from liability as well. To hold otherwise would implicate State funds and expose Aetna to liability from which its principal is protected and, more importantly, would undercut the public policy that favors allowing the State to contract with private entities to more efficiently provide services to government employees.[3]

---

[3] In *GAB Business Services, Inc. v. Moore*, the court held that the private company was acting as an independent contractor in its role as insurance adjuster for certain municipalities' workers' compensation claims. 829 S.W.2d 345, 350 (Tex. App.—Texarkana 1992, no writ). We decline to follow our sister court's reasoning related to determining whether a private company is an independent contractor or an agent of the State.

Foster's claim for breach of contract was brought solely against TRS, which is immune. *See Federal Sign*, 951 S.W.2d at 409. Her claims for breach of the duty of good faith and fair dealing, insurance code violations, and DPTA violations all reduce to the argument that her claims should have been covered under the policy. Absent a waiver of immunity, TRS and therefore Aetna are immune from suit from such a claim.[4] Finally, Foster's declaratory judgment claim, as discussed earlier, does not under these circumstances provide a waiver of immunity. *See McLane Co.*, 148 S.W.3d at 649-51. We overrule Foster's fourth issue.

Finally, we consider whether the trial court should have abated the suit rather than dismissing it, to give Foster time to seek a waiver from the legislature when it next convened. If an impediment to jurisdiction can be removed, a trial court may abate the cause to allow the plaintiff a reasonable opportunity to cure the jurisdictional problem. *American Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 805 (Tex. 2001). In *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, the supreme court held that when the impediment to the trial court's jurisdiction could be removed by allowing the plaintiff to exhaust its administrative remedies, "the trial court *should* abate McDavid's claims that require findings that fall within the Board's exclusive jurisdiction to allow McDavid a reasonable opportunity to cure the jurisdictional problem." 84 S.W.3d 212, 228 (Tex. 2002) (emphasis added). However, *David McDavid* and other cases holding that trial courts should have abated, not dismissed, involve parties asserting common-law claims over which the trial court could exercise jurisdiction in addition to seeking judicial review of administrative claims not yet

---

[4] Further, the insurance code provides that the TRS retirees' insurance plan "is exempt from any other insurance law, including common law, that does not expressly apply to the plan or this chapter" of the insurance code. Tex. Ins. Code Ann. § 1575.008 (West Supp. 2008).

exhausted. *See Marble Falls Indep. Sch. Dist. v. Scott*, No. 03-07-00576-CV, 2008 Tex. App. LEXIS 8600, at *18-19 (Tex. App.—Austin Nov. 14, 2008, no pet. h.). In this case, the trial court lacked jurisdiction over both defendants, and dismissal, not abatement to cure a timing issue, was appropriate. *See, e.g.*, *Freedman v. University of Houston*, 110 S.W.3d 504, 509 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *see Ab-Tex Bev. Corp. v. Angelo State Univ.*, 96 S.W.3d 683, 687-88 (Tex. App.—Austin 2003, no pet.) (under Tex. Civ. Prac. & Rem. Code Ann. § 107.002 (West 1997), party has two years from date of legislative resolution granting permission to sue; therefore, "there is no reason why Ab-Tex cannot refile its lawsuit should it ultimately obtain legislative permission to sue the university"). We hold that the trial court, which lacked jurisdiction over appellees, did not err in dismissing Foster's suit without prejudice rather than abating it. We overrule Foster's fifth and final issue.

Having overruled Foster's issues, we affirm the trial court's order.

_____

David Puryear,  Justice

Before Chief Justice Law, Justices Puryear and Waldrop

Affirmed

Filed:   December 23, 2008