

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00752-CV

**HUMANA INSURANCE COMPANY**,
Appellant

v.

Dolores **MUELLER**,
Appellee

From the County Court at Law No. 3, Bexar County, Texas
Trial Court No. 376765
Honorable Tina Torres, Judge Presiding

Opinion by:     Jason Pulliam, Justice

Sitting:        Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice
                Jason Pulliam, Justice

Delivered and Filed:  April 29, 2015

REVERSED AND RENDERED

        This is an interlocutory appeal of the trial court's order denying a plea to the jurisdiction filed by appellant Humana Insurance Company.  Humana provides administrative services for a self-funded health care plan adopted by the San Antonio Housing Authority.  Appellee, Dolores Mueller, was an employee of SAHA who was denied benefits under the plan.  On appeal, Humana contends the trial court erred in denying its plea to the jurisdiction because Humana, as SAHA's agent, is entitled to the same sovereign immunity from suit as SAHA.  We reverse the trial court's order and render judgment dismissing the underlying lawsuit for lack of jurisdiction.

## BACKGROUND

SAHA adopted a self-funded medical and prescription drug plan to provide health care benefits to its employees. SAHA entered into a Plan Management Agreement with Humana pursuant to which Humana, as the Plan Manager, acted as SAHA's agent to administer the plan.

The Plan Management Agreement expressly limits Humana's discretionary authority, stating, "The Plan Manager does not have discretionary authority or responsibility in the administration of the Plan. The Plan Manager will not exercise discretionary authority or control respecting the disposition or management of assets of the Plan." The agreement also provides, "The Plan Administrator and not the Plan Manager is ultimately responsible for interpreting the provisions of the Plan and determining questions of eligibility for Plan participation." With regard to claims under the Plan, the agreement further provides, "if the Plan Administrator makes a determination to approve or deny a claim which is different than the determination made by the Plan Manager, the Plan Manager will promptly issue an approval or denial of the claim" based on the Plan Administrator's decision. Finally, the agreement states, "Appeals of denied claims shall be processed in accordance with the applicable provisions of the Plan. [SAHA] acknowledges that the Plan Administrator shall have the ultimate responsibility and authority to make final determinations with respect to claims and is responsible for providing Participants with a written explanation of that decision."[1] SAHA's final authority with regard to the approval or denial of the claims is also reflected in the Plan which provides, "If the *claimant* is dissatisfied with the decision [by Humana] on [the] first level of appeal, or if Humana fails to make a decision within the time frame indicated below, the *claimant* may appeal to the *Plan Administrator*."

---

[1] This provision is contained in an Amendment to Plan Management Agreement dated effective January 1, 2008.

With regard to the funding of the benefits paid under the Plan, the agreement provides, "Plan benefits shall be funded exclusively through the Plan. The Plan Manager is not responsible or accountable for providing funds to pay plan benefits under any circumstances."

Finally, the agreement requires SAHA to indemnify Humana for all damages except those resulting from Humana's fraud, embezzlement, willful misconduct, or failure to abide by the agreement. The agreement expressly states, "The Plan Manager will not be liable on account of actions or inaction undertaken by it in good faith and performed in accordance with the provisions of this Agreement or for the cost of benefits under the Plan which are claimed or awarded to a Participant."

While employed by SAHA, Mueller sought precertification for a spinal decompression surgery. After Humana denied precertification, Mueller filed the underlying lawsuit asserting claims against both SAHA and Humana. Mueller subsequently amended her pleadings, dropping her claims against SAHA and only alleging violations of the insurance code and violations of the deceptive trade practices act against Humana. Mueller's pleadings seek damages for "denial of benefits, physical pain and suffering, and mental and emotional anguish."

Humana filed a plea to the jurisdiction asserting immunity from suit as SAHA's agent administering the plan. After a hearing, the trial court denied Humana's plea, and Humana appeals.

## APPELLATE JURISDICTION

Citing section 51.014(a)(5) of the Texas Civil Practice and Remedies Code, Mueller asserts this court does not have jurisdiction to consider Humana's appeal. Humana responds that it invoked this court's jurisdiction under section 51.014(a)(8) of the Code. Humana's notice of appeal states the appeal is authorized by section 51.014(a)(8).

"Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides such jurisdiction." *Tex. A&M Univ. Sys. v. Koseoglu*, 233

S.W.3d 835, 840 (Tex. 2007). Section 51.014(a)(8) of the Code allows a person to appeal from an interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2015). It is undisputed that SAHA is a governmental unit. *See* TEX. LOC. GOV'T CODE ANN. § 392.006 (West 2015). The question is whether Humana, as SAHA's agent, is also entitled to appeal under section 51.014(a)(8).

The Texas Supreme Court has held that section 51.014(a)(8) applies to entities other than governmental units. *Koseoglu*, 233 S.W.3d at 844. In holding that a state official is entitled to appeal under section 51.014(a)(8), the court explained, "When a state official files a plea to the jurisdiction, the official is invoking the sovereign immunity from suit held by the government itself." *Id*. Similarly, in the instant case, Humana is seeking to invoke the sovereign immunity from suit held by SAHA. Accordingly, we have jurisdiction to consider this appeal.

## STANDARD OF REVIEW

"Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). "Whether a court has subject matter jurisdiction is a question of law" reviewed de novo. *Id*. at 226.

## DISCUSSION

"Sovereign immunity in Texas embodies two concepts: immunity from liability and immunity from suit." *Rusk State Hosp. v. Black*, 392 S.W.3d. 88, 93 (Tex. 2012). In this case, Humana is asserting immunity from suit. "[I]mmunity from suit completely bars actions against [governmental] entities unless the Legislature expressly consents to suit." *Id*.

A. *Foster v. Teacher Retirement System*

In asserting immunity from suit, Humana primarily relies on the Austin court's decision in *Foster v. Teacher Retirement Sys.*, 273 S.W.3d 883 (Tex. App.—Austin 2008, no pet.). In that

case, Diana Foster, a retired teacher, was insured through the Teacher Retirement System of Texas (TRS), which is a state agency. *Foster*, 273 S.W.3d at 885. Pursuant to an agreement, TRS's insurance plan was administered by Aetna Life Insurance Company and Aetna Health Management, LLC (collectively referred to herein as "Aetna"). *Id*. After Aetna denied coverage for a claim for medical services submitted by Foster, Foster sued TRS and Aetna for breach of contract, breach of the duty of good faith and fair dealing, violations of the insurance code, and violations of the deceptive trade practices act. *Id*. TRS and Aetna filed pleas to the jurisdiction which the trial court granted. *Id*. at 886.

The Austin court initially rejected Foster's argument that the legislature waived TRS's immunity, holding the statutory language on which Foster relied did not constitute a waiver. *Id*. at 886-87. The court then considered Foster's argument that Aetna was not shielded by sovereign immunity because it was a private entity. *Id*. at 888. The court noted Aetna was functioning as an agent of TRS and Aetna's involvement in the matter arose solely out of its actions on TRS's behalf. *Id*. at 888-89. The court also noted "[a]ll of Foster's claims make essentially the same argument — that the [medical services] should have been covered under the terms of [the] insurance plan." *Id*. at 889. The court held that Aetna was immune from suit, reasoning:

> Under the contract, Aetna simply provides administrative services to facilitate the provision of health care to retirees covered by TRS. The insurance plan is fully funded by the State, and Aetna has no financial stake in the approval or denial of a claim. TRS has the exclusive right to determine the terms of the plan and may amend or terminate the plan at any time. In relation to Foster's claims, Aetna was acting as an agent of TRS and in a fiduciary capacity for the benefit of the State, and Foster has not alleged that Aetna exceeded the scope of its delegated duty of determining claim coverage or committed fraud or a similar tort. Thus, TRS's immunity should protect Aetna from liability as well. To hold otherwise would implicate State funds and expose Aetna to liability from which its principal is protected and, more importantly, would undercut the public policy that favors allowing the State to contract with private entities to more efficiently provide services to government employees.

*Id*. at 890 (internal citation omitted).

B.    SAHA's Immunity

In an effort to distinguish *Foster*, Mueller first responds that, unlike the TRS, SAHA is not immune from suit for claims relating to the plan. As support for this argument, Mueller relies on Chapter 172 of the Texas Government Code, which allows a political subdivision to provide health and accident coverage for its employees, and Chapter 271 of the Texas Local Government Code, which waives immunity for certain breach of contract claims. Mueller also contends SAHA's provision of insurance to its employees is a proprietary function for which immunity is waived under the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b) (West Supp. 2014).

In response to Mueller's first argument, we agree with Humana that SAHA's establishment of its self-insured benefits plan is governed by Chapter 2259 of the Texas Government Code, not Chapter 172 as asserted by Mueller. Under section 2259.031(a) of the Government Code, a governmental unit, like SAHA, may establish a self-insurance fund to protect itself and its employees from any insurable risk. TEX. GOV'T CODE ANN. § 2259.031(a) (West Supp. 2014). Under a self-funded benefit plan, the governmental unit "assumes the risk of providing health insurance to its employees, instead of ceding the risk to a third-party insurance company." *Tex. Dept. of Ins. v. American Nat'l Ins. Co.*, 410 S.W.3d. 843, 846 (Tex. 2012). Section 2259.002 of the Government Code expressly provides that the "establishment and maintenance of a self-insurance program by a governmental unit is not a waiver of immunity." TEX. GOV'T CODE ANN. § 2259.002 (West 2008).

With regard to Mueller's second argument, her reliance on Chapter 271 of the Local Government Code is misplaced. As previously noted, Chapter 271 waives sovereign immunity from suit for certain breach of contract claims against qualifying local governmental entities. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2005); *City of San Antonio ex rel. City Public*

*Service Bd. v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597, 601 (Tex. App.—San Antonio 2012, pet. denied). Mueller, however, is not asserting a breach of contract claim against Humana.[2] Instead, her only claims against Humana are for violations of the insurance code and violations of the deceptive trade practices act.

With regard to Mueller's final argument, case law does support Mueller's contention that the provision of a health insurance plan or health insurance benefits by a municipality is a proprietary function to the extent the provision of such insurance is not mandated by statute. *See Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986) (holding city acted in proprietary role in entering into insurance contract for employee health benefits); *Temple v. City of Houston*, 189 S.W.3d 816, 821 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding city performs proprietary function in providing insurance benefits to employees that are not required by statute); *Bailey v. City of Austin*, 972 S.W.2d 180, 193 (Tex. App.—Austin 1998, pet. denied) (concluding city's offering, administering, and overseeing of health care plans for its own employees are proprietary functions); *but see Galveston Ind. Sch. Dist v. Clear Lake Rehabilitation Hosp., L.L.C.*, 324 S.W.3d 802, 809 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (noting city engages in governmental function when it performs a function mandated by statute). Moreover, we agree that a municipality's immunity from suit for tort claims is waived when a municipality engages in proprietary functions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b) (West Supp. 2014); *Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d at 603-05. We disagree, however, that SAHA is a municipality to which the foregoing law applies.

Chapter 392 of the Texas Local Government Code is entitled "Housing Authorities Established by Municipalities and Counties." TEX. LOC. GOV'T CODE ANN. §§ 391.001, et seq.

---

[2] We note Mueller is not a party to the agreement between SAHA and Humana. In addition, the Plan states, "This Plan does not constitute a contract between the *employer* and any *covered person*."

(West 2015). Section 392.006 entitled "Unit of Government; Governmental Functions" provides, in pertinent part, "For all purposes, including the application of the Texas Tort Claims Act (Chapter 101, Civil Practice and Remedies Code), a housing authority is a unit of government and the functions of a housing authority are essential governmental functions and not proprietary functions." *Id*. at § 392.006. Accordingly, the Texas Legislature has distinguished a housing authority from a municipality and expressly provided that a housing authority's functions are governmental functions for purposes of the Texas Tort Claims Act. *Id*. As a result, SAHA is not a municipality performing a proprietary function for which immunity is waived.

C.      Humana's Immunity

Mueller next attempts to distinguish *Foster* by citing cases involving official immunity and ultra vires acts and by asserting Humana has direct liability as an administrator under the Texas Insurance Code.

1.      Official Immunity

Mueller contends Humana is actually seeking official immunity and cites cases discussing official immunity. It is clear from Humana's plea to the jurisdiction and its briefing, however, that Humana is not asserting official immunity, but sovereign immunity from suit.

One of the cases cited by Mueller both to the trial court and to this court is *Garza v. Blue Cross & Blue Shield of Tex., Inc.*, No. 03-98-00706-CV, 1999 WL 1078697 (Tex. App.—Austin Dec. 2, 1999, no pet.) (not designated for publication). Unlike the instant case, the defendants in that case "interposed the affirmative defense of official immunity." *Garza*, 1999 WL 1078697, at *1. Before addressing the merits of the issues presented, the Austin court commented on the type of immunity being addressed, noting:

> The doctrine of official immunity protects the interests of government by protecting its officers and employees from suits and liabilities based on actions taken by them in the good-faith performance of discretionary duties coming within

the scope of their official authority. Where official immunity protects a government officer or employee, the government entity for which they act derives immunity therefrom by operation of the *respondeat superior* principle. This derived immunity is not to be confused with the government entity's sovereign immunity, which protects the government entity directly.

*Id.* (internal citations omitted). Because Humana has not asserted official immunity in this case, *Garza* is inapplicable.

### 2. Ultra Vires Acts

Mueller next cites *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009) to assert Humana is not entitled to immunity because it committed ultra vires acts which were outside the scope of its authority. "[T]he ultra vires exception to immunity only applies where a government actor fails to perform a ministerial task or acts without authority of law." *Southwestern Bell Telephone, L.P. v. Emmett*, No. 13-0584, 2015 WL 1285326, at *8 (Tex. Mar. 20, 2015). "A successful claimant in an ultra vires suit against a government official may obtain prospective declaratory or injunctive relief, but it may not recover retrospective relief, such as monetary damages." *Thielemann v. Blinn Bd. of Trustees*, No. 01-14-00595-CV, 2015 WL 1247018, at *3 (Tex. App.—Houston [1st Dist.] Mar. 17, 2015, no pet.) (mem. op.); *see also Heinrich*, 284 S.W.3d at 368-69; *Hamilton v. Washington*, No. 03-11-00594-CV, 2014 WL 7458988, at *5 (Tex. App.—Austin Dec. 23, 2014, no pet.) (mem. op.). We question whether Mueller's pleadings allege an ultra vires act, but even if they did, Mueller does not seek prospective declaratory or injunctive relief. Instead, she seeks monetary damages for which immunity is not waived. *See Hamilton*, 2014 WL 7458988, at *5.

### 3. Administrator under Insurance Code

Mueller's final argument is premised on her contention that Humana was acting as an administrator as the term is defined in the Texas Insurance Code. As previously noted, however, SAHA's plan was adopted pursuant to Chapter 2259 of the Government Code. Although

recognizing that terms used in the Insurance Code might appear to make the state's regulatory authority extend to self-funded employee health benefit plans, the Texas Supreme Court has held that state law does not regulate self-funded insurance plans. *See Tex. Dept. of Ins. v. American Nat'l Ins. Co.*, 410 S.W.3d at 849 & n.5 (citing section 2259.037 of the Government Code and stating state law exempts self-funded plans of governmental entities from regulation); *see also* TEX. INS. CODE ANN. § 4151.002(17) (West 2009) (excluding self-insured political subdivisions from definition of administrator). Therefore, in this context, it does not appear that Humana would be subject to regulation for administering SAHA's self-funded plan. Even if we assume, however, that Humana is, in this context, an administrator regulated by Chapter 4151 of the Insurance Code, Mueller fails to explain how being subject to such regulation waives Humana's immunity from suit.

## CONCLUSION

Although Mueller contends her claims differ from the claims asserted in *Foster*, the claims in *Foster* included "breach of the duty of good faith and fair dealing, insurance code violations, and DTPA violations." 273 S.W.3d at 890. Mueller admits in her brief that her "claims are based exclusively on the fact that HUMANA violated provisions of the Texas Insurance Code." Therefore, her claims are just like the claims for insurance code violations asserted in *Foster*, and, similar to the claims in *Foster*, Mueller's claims "all reduce to the argument that her [spinal decompression surgery] should have been covered under the [plan]." *Id*. Accordingly, we hold SAHA's immunity from suit extends to Humana. "To hold otherwise would implicate [governmental] funds and expose [Humana] to liability from which its principal is protected and, more importantly, would undercut the public policy that favors allowing [governmental units] to

contract with private entities to more efficiently provide services to government employees." *Id*.

The trial court's order is reversed, and the underlying cause is dismissed for lack of jurisdiction.

Jason Pulliam, Justice