**Affirm; Opinion Filed October 2, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00239-CV

**BARBARA STEGALL, INDIVIDUALLY, AND ON BEHALF OF
THE ESTATE OF JOE STEGALL, Appellant
V.
TML MULTISTATE INTERGOVERNMENTAL EMPLOYEE BENEFITS
POOL, INC., AND UMR, INC., Appellees**

**On Appeal from the County Court at Law No. 4
Dallas County, Texas
Trial Court Cause No. CC-16-05440-D**

## MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Pedersen, III

Members of this Court are vested with the authority to interpret the law; we possess neither the expertise nor the prerogative to make policy judgments. Those decisions are entrusted to our . . . elected leaders, who can be thrown out of office if the people disagree with them. It is not our job to protect the people from the consequences of their political choices.[1]

This is an appeal of the trial court's orders granting the partial plea to the jurisdiction filed by appellee TML Multistate Intergovernmental Employee Benefits Pool, Inc. and the first amended plea to the jurisdiction[2] filed by appellee UMR, Inc. Appellant Barbara Stegall, Individually, and on behalf of the Estate of Joe Stegall, asserts that the trial court erred in granting

---

[1] *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012) (Chief Justice Roberts, for a majority of the Court).

[2] The trial court's order states that it "hereby GRANTS the UMR, Inc.'s Plea (and First Amended Plea) to the Jurisdiction."

appellees' pleas to the jurisdiction. In a single issue, she contends that appellees have no governmental immunity because her claims pertain to appellees' proprietary functions, not their governmental functions. We affirm.

## BACKGROUND

The suit underlying this appeal is a health benefits coverage dispute. Joe Stegall worked as the Chief Financial Officer for the city of Royse City, Texas. As a city employee, he was eligible for, and participated in, the city's medical and prescription drug benefits provided by TML Multistate Intergovernmental Employee Benefits Pool, Inc. (TML). TML is an intergovernmental self-insurance risk pool that operates under the Texas Interlocal Cooperation Act. *See* TEX. GOV'T CODE ANN. §§ 791.001, 791.011. UMR, Inc. (UMR) is one of TML's third-party administrators.

In May 2014, Mr. Stegall was diagnosed with bile duct cancer and liver cancer. His oncologist advised him to begin treatment immediately, using a combination of chemotherapy medications specifically targeting bile duct cancer. The oncologist stated that once he saw how Mr. Stegall responded to the first chemotherapy regimen, additional chemotherapy would be added to treat the liver cancer. Based on Mr. Stegall's positive response to the first chemotherapy regimen, on October 23, 2014, his oncologist prescribed sorafenib (brand name Nexavar), an FDA-approved drug designed to increase survival rates and life expectancy for patients with advanced liver cancer.

TML and UMR initially denied coverage for Nexavar for Mr. Stegall. When the oncologist sought clarification, he learned that the TML and/or UMR medical representative did not believe that Mr. Stegall actually had liver cancer. Mr. Stegall's oncologist attempted to procure Nexavar through other sources. However, when TML learned of these attempts, a TML representative called Mr. Stegall's oncologist to warn that TML would consider terminating Mr. Stegall's health benefits coverage if Mr. Stegall took Nexavar without TML's authorization. On November 21,

2014, Mr. Stegall and his oncologist learned that TML had reversed its position and would provide coverage for Nexavar. Unfortunately, Mr. Stegall died several weeks later.

Barbara Stegall, individually, and on behalf of the estate of her deceased husband, sued TML and UMR for wrongful denial of medical benefits and additional acts of interference with the decedent's access to prescribed chemotherapy. Stegall brought suit under tort and contract theories. TML and UMR filed general denials and, as to the tort claims, both filed pleas to the jurisdiction on grounds of governmental immunity. After separate hearings, the trial court granted both pleas to the jurisdiction, leaving only Stegall's breach of contract claims against TML. Stegall voluntarily nonsuited her breach of contract claims against TML and filed a motion for new trial. After her new trial motion was overruled by operation of law, Stegall filed this appeal.

## DISCUSSION

Stegall contends that the trial court erred in granting appellees' pleas to the jurisdiction. She does not argue that this is a case in which governmental immunity was waived. Instead, she argues that governmental immunity never existed because appellees' claims-adjusting activities, including improperly denying coverage, attempting to intimidate Mr. Stegall into foregoing chemotherapy, threatening Mr. Stegall's future coverage, and later reversing their position on coverage without notifying Mr. Stegall of their decision, were proprietary—not governmental—functions.

### Plea to the Jurisdiction

In their pleas to the jurisdiction, TML and UMR argued that they had governmental immunity from Stegall's suit. An assertion of governmental immunity implicates a court's subject matter jurisdiction, and such immunity is properly asserted in a plea to the jurisdiction. *Harris Cty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018). The existence of subject matter jurisdiction is a question of law, and we review the trial court's ruling on a plea to the jurisdiction de novo. *See*

*id*.; *see also City of Dallas v. E. Vill. Ass'n*, 480 S.W.3d 37, 42 (Tex. App.—Dallas 2015, pet. denied).

A plea to the jurisdiction can be based on the pleadings or on the evidence. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *City of Dallas v. Turley*, 316 S.W.3d 762, 767 (Tex. App.—Dallas 2010, pet. denied). When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226, 228. We look to the allegations in the pleadings, construe them in the plaintiff's favor, and look to the pleader's intent. *See Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Peek v. Equip. Serv. Co*., 779 S.W.2d 802, 804 (Tex. 1989). The plaintiff bears the burden to allege facts that affirmatively demonstrate the trial court's jurisdiction to hear a case. *Miranda*, 133 S.W.3d at 226–27; *Turley*, 316 S.W.3d at 767.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to determine if a fact issue exists. *Miranda*, 133 S.W.3d at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id*. at 228.

**Immunity**

Sovereign immunity and governmental immunity are related common law doctrines that protect the government from suit. *Hughes v. Tom Green Cty*., 573 S.W.3d 212, 218 (Tex. 2019). "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)). Governmental immunity encompasses both immunity from suit

and immunity from liability. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Immunity from suit completely bars actions against governmental entities unless the Legislature expressly consents to suit. *Tooke*, 197 S.W.3d at 332.

**Does TML have governmental immunity?**

To answer this question, we first determine whether TML is a governmental entity. The Texas Legislature has expressly authorized groups of political subdivisions to enter into interlocal agreements to establish risk pools to provide health benefits coverage for their officials and employees. TEX. LOC. GOV'T CODE ANN. § 172.004(a); *see also* TEX. GOV'T CODE ANN. §§ 791.001, 791.011, 2259.031(a). Under the Texas Interlocal Cooperation Act, those political subdivisions are empowered to contract with one another through interlocal agreements to pool their resources and collectively self-insure against insurable risks and hazards. *See* TEX. GOV'T CODE ANN. §§ 791.001, 791.011. TML is such a pool; it has over 900 members from more than forty different types of political subdivisions, all participating in the risk pool to provide self-insured health coverage for their officials, employees, and other relevant persons. *See TML Intergovernmental Emp. Benefits Pool v. Prudential Ins. Co. of Am.*, 144 S.W.3d 600, 603 (Tex. App.—Austin 2004, pet. denied) ("The Pool was created to provide health benefits coverage to employees of political subdivisions.").

"Many of our courts of appeals have considered self-insurance pools, though composed of political subdivisions, to be distinct governmental entities apart from their membership." *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 326 (Tex. 2006) (internal citations omitted). The *Ben Bolt* case involved a self-insurance fund composed of several political subdivisions that was sued by a fund member after the fund denied a claim for benefits. *Id*. at 322. The court looked to the governing statutory

authority to determine whether the Legislature intended that the fund have discrete governmental-entity status. *Id.* at 324–26. The court concluded that the fund was a governmental entity in its own right and was entitled to immunity on equal footing with its constituent members. *Id.* at 326. In so holding, the court identified several indicia of legislative intent in the Texas Interlocal Cooperation Act and the Texas Government Code's self-insurance provisions. Under the Interlocal Cooperation Act's special definitions, the fund was a "local government." *Id.* at 324–25 (citing TEX. GOV'T CODE § 791.003(4)(A), (E)). The Act also "expressly authorized combinations of political subdivisions," like the fund, "to perform government functions and services," which were defined as including any "governmental functions in which the contracting parties are mutually interested." *Id.* at 324–25 (citing TEX. GOV'T CODE §§ 791.003(3)(N), .003(4)(E), .011(a)).

In *Rosenberg Development Corporation v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738 (Tex. 2018), the Texas Supreme Court discussed its analysis in the *Ben Bolt* case, stating "[w]e noted that local governments have an interest in guarding against risk and the Legislature explicitly authorized political subdivisions to combine to provide self-insurance and 'use available money to finance a self-insurance pool' 'as a 'public purpose' of the governmental unit.'" *Id.* at 749. Applying the analysis of *Ben Bolt* and *Rosenberg* to TML, we conclude that TML's "nature, purposes, and powers" demonstrate legislative intent that it exist as a distinct governmental entity entitled to assert immunity in its own right. *See Ben Bolt*, 212 S.W.3d at 326; *Rosenberg*, 571 S.W.3d at 749.

Having resolved that TML is a distinct governmental entity, we next determine whether the Legislature expressly waived that immunity. It is the province of the Legislature to consent to a suit against a governmental entity. *Ben Bolt*, 212 S.W.3d at 326. "We have consistently deferred to the Legislature to waive sovereign immunity from suit, because this allows the Legislature to protect its policymaking function." *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d

849, 854 (Tex. 2002). Immunity is waived only by clear and unambiguous language. *Tooke*, 197 S.W.3d at 328–29. The government code expressly states: "The establishment and maintenance of a self-insurance program by a governmental unit is *not* a waiver of immunity or of a defense of the governmental unit or its employees." TEX. GOV'T CODE § 2259.002 (emphasis added). It further provides: "The issuance of a public security or the use of available money for a self-insurance fund under this subchapter is a public purpose of the governmental unit." *Id*. § 2259.032. "Because immunity from suit protects the public coffers, 'the claims process is tied to the appropriations process, and the priorities that guide the latter should also inform the former.'" *Ben Bolt*, 212 S.W.3d at 326 (quoting *Tooke*, 197 S.W.3d at 332).

In *Ben Bolt*, the Texas Supreme Court concluded that given the fund's governmental immunity shield, Ben Bolt's claims were barred absent a waiver of that immunity. *Id*. at 326. We likewise conclude that in light of TML's governmental immunity shield, Stegall's claims are barred absent a waiver of that immunity. *See id*.

**Governmental/Proprietary Function Dichotomy**

Stegall does not contend that TML's governmental immunity has been waived. Instead, she argues that TML's governmental immunity is not absolute and extends only to TML's performance of governmental functions and not to its performance of proprietary functions. Stegall contends that TML's governmental functions are limited to the establishment and maintenance of the risk pool. She insists that TML's claims-adjusting activities are proprietary functions for which TML had no immunity. TML and UMR respond that the governmental/proprietary distinction on which Stegall bases her argument only applies to municipalities and does not apply to the risk pool as a matter of law.

Stegall's argument is based on her interpretation of two recent Texas Supreme Court opinions, *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427 (Tex. 2016) (*Wasson I*)

and *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142 (Tex. 2018) (op. on rehearing) (*Wasson II*). She argues that these opinions overturn the long-established distinction under Texas law between immunity of municipalities and immunity of other political subdivisions of the state. We do not agree that either *Wasson* opinion supports this conclusion.

*Wasson I* and *Wasson II* involve a dispute between a tenant and City of Jacksonville over lakefront property owned by the city. In *Wasson I*, the Texas Supreme Court stated, "we have long held that '[a] municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions.'" *Wasson I*, 489 S.W.3d at 430 (quoting *Tooke*, 197 S.W.3d at 343). The court held that, as a matter of first impression, the governmental/proprietary distinction applies in the contract-claims context just as it does in the tort-claims context. *Id*. at 439. The court only addressed the governmental/proprietary distinction as it applies to municipalities and, indeed, confirmed that it only applies to municipalities. *See id*. at 430 n.3 ("In practice—because of the governmental nature of counties and school districts—this distinction only applies to municipalities.").

In *Wasson II*, the court considered whether the contract claim arose from the municipality's performance of a governmental or proprietary function. 559 S.W.3d at 148. The court held that the municipality was engaged in a proprietary function when it leased its lakefront lots to Wasson, and thus governmental immunity did not bar Wasson's claim that the city breached those leases. *Id*. at 154. After careful consideration, we conclude that *Wasson I* and *Wasson II* did not expand application of the governmental/proprietary dichotomy to political subdivisions other than municipalities.

The Texas Supreme Court specifically addressed this issue in *Guillory v. Port of Houston Authority*, 845 S.W.2d 812 (Tex. 1993), in refusing to extend the proprietary function immunity limitation to non-municipal governmental subdivisions. Guillory, the plaintiff, argued that because

municipalities are not immune from liability for their proprietary actions, other subdivisions of government, such as a non-municipal port authority, should likewise not be immune from liability for their proprietary actions. 845 S.W.2d at 814–15. The Texas Supreme Court rejected Guillory's argument for several reasons. It reasoned that the limitation on immunity which Guillory sought had the same effect as a waiver, which remains a matter for the Legislature. *Id*. at 814. The court noted that the Legislature had assumed such an undertaking for municipalities, classifying proprietary and governmental activities, and waiving immunity for the former. *Id*. The court distinguished between municipalities, created by consent of their inhabitants, and governmental units such as the non-municipal port authority, created by the Legislature for general public purposes, that are "entirely governmental in function." The court acknowledged that "applying immunity based upon the creation of the governmental unit instead of its function results in certain anomalies and inconsistencies." *Id*. Nevertheless, the court declined to apply the proprietary function immunity limitation to a non-municipal port authority, and it noted that "one governmental unit cannot be denied the immunity to which it would otherwise be entitled simply because the Legislature has waived immunity for another governmental unit." *Id*. at 815.

Here, we have concluded that TML is a distinct governmental entity entitled to assert immunity in its own right. We have also determined that the Legislature intended for such funds to perform governmental functions and services. And the Legislature did not expressly waive or limit governmental immunity for such funds. Therefore, we reject Stegall's argument that the governmental/proprietary distinction should apply to TML.

**Does UMR have governmental immunity?**

With respect to UMR, Stegall asserts that as a private entity, UMR has no immunity of its own. Therefore, according to Stegall, because TML has no immunity for this suit, there can be no

derived immunity for UMR. Alternatively, Stegall argues that even if TML has government immunity, the same immunity cannot be extended to UMR.

In response, UMR asserts that TML is entitled to immunity and as its third-party administrator, UMR is entitled to the same immunity. UMR contends that *Foster v. Teacher Retirement System*, 273 S.W.3d 883 (Tex. App.—Austin 2008, no pet.), supports its argument that a third-party administrator for a governmental plan enjoys the same immunity from suit and liability. *Id*. at 889–90. In *Foster*, Aetna was the administrator of a plan maintained by the Teachers Retirement System (TRS) for its eligible employees. *Id*. at 890. Aetna was not the insurer of the plan, and it only provided administrative services to TRS. The court determined that Aetna was functioning as an agent for TRS and in a fiduciary capacity for the benefit of the State; therefore, "TRS's immunity should protect Aetna from liability as well." *Id*.

Other Texas courts agree that third-party administrators for government health plans, including municipal plans, are immune from suit and liability. *See United Healthcare Choice Plus Plan for City of Austin Employees v. Lesniak*, No. 03-15-00309-CV, 2015 WL 7951630, at *3 (Tex. App.—Austin Dec. 1, 2015, pet. denied) (mem. op.) (reversing trial court's denial of plea to jurisdiction because the city and its plan administrator were entitled to governmental immunity); *Humana Ins. Co. v. Mueller*, No. 04-14-00752-CV, 2015 WL 1938657, at *2–5 (Tex. App.—San Antonio Apr. 29, 2015, pet. denied) (mem. op.) (Humana, third-party administrator of self-funded health care plan, was entitled to same sovereign immunity from suit as San Antonio Housing Authority); *McAllen Anesthesia Consultants, P.A. v. United Healthcare Servs., Inc*., No. 7:14-CV-913, 2015 WL 9257154, at *8 (S.D. Tex. Dec. 14, 2015) (immunity extended to third-party administrator of health insurance plan for Employees Retirement System of Texas (ERS) because, among other reasons, final decisions on benefit payments rested with ERS).

Here, UMR is a third-party administrator for TML. According to the record, UMR is not an insurer and does not guarantee any benefits under the plan. According to plan documents, employer members—local and state governmental units—were responsible for funding TML plan benefits, not UMR. UMR provides administrative services to assist TML in facilitating the provision of health care benefits under the plan. The plan is self-funded, and UMR has no financial stake in whether claims are approved or denied. There is no dispute that TML makes the final decision on denying claims for benefits under the plan. Based on this record, we conclude that UMR, as TML's third-party administrator, has the same governmental immunity as TML. *See Foster*, 273 S.W.3d at 889–90.

Because we have already concluded that TML has governmental immunity, we also conclude that UMR has governmental immunity with respect to Stegall's claims.

## CONCLUSION

This case presents an emotional and tragic scenario in which we are asked to ignore the governmental immunity enjoyed by TML and UMR. However, this Court, like the U.S. Supreme Court in *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012), must apply the law, and mandatory authority interpreting such law, to effectuate the Legislature's intent. *See* TEX. GOV'T CODE §§ 791.003(3)(N), .011(a); *Ben Bolt*, 212 S.W.3d at 326. Accordingly, we affirm the trial court's orders granting appellees' pleas to the jurisdiction.


/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE


Partida-Kipness, J., dissenting

180239F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BARBARA STEGALL, INDIVIDUALLY, AND ON BEHALF OF THE ESTATE OF JOE STEGALL, Appellant

No. 05-18-00239-CV        V.

TML MULTISTATE INTERGOVERNMENTAL EMPLOYEE BENEFITS POOL, INC., AND UMR, INC., Appellees

On Appeal from the County Court at Law No. 4, Dallas County, Texas
Trial Court Cause No. CC-16-05440-D.
Opinion delivered by Justice Pedersen, III.
Justices Whitehill and Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees TML MULTISTATE INTERGOVERNMENTAL EMPLOYEE BENEFITS POOL, INC., AND UMR, INC. recover their costs of this appeal from appellant BARBARA STEGALL, INDIVIDUALLY, AND ON BEHALF OF THE ESTATE OF JOE STEGALL.

Judgment entered this 2nd day of October, 2019.