**Opinion filed October 18, 2018**



### In The

# Eleventh Court of Appeals

_____

## No. 11-16-00323-CV

_____

## CITY OF MERKEL, Appellant

## V.

## ALAN COPELAND AND RUTH CULLEY, Appellees

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 26098-B**

### O P I N I O N

In this interlocutory appeal, the City of Merkel appeals the trial court's denial of a plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2018). Alan Copeland and Ruth Culley sued the City of Merkel for breach of contract based on the City's alleged breach of the parties' "Treated Wastewater Effluent Purchase Contract." The City filed a plea to the jurisdiction and a motion for summary judgment based on the City's claim of governmental

immunity. The trial court denied the motion for summary judgment and the plea to the jurisdiction. We reverse and render.

*Background Facts*

The City owns and operates a wastewater treatment facility. That facility produces treated wastewater or "effluent" that, according to the contract, is suitable for release into natural waterways or for irrigation use. In 2011, the City contracted with Tin Cup Country Club, L.P., to sell treated effluent to Tin Cup "for the sole purpose of irrigating" Tin Cup's golf course. According to the terms of the contract, the City agreed to sell its wastewater to Tin Cup and to establish a "delivery line" from its wastewater treatment plant that would transfer the water to Tin Cup's "acceptance point." Tin Cup, in exchange, agreed to accept 100% of the City's treated wastewater and to pay the City $1.50 per 100,000 gallons delivered. The term of the contract was for twenty-five years.

Appellees purchased Tin Cup and became successors in interest to the contract. For the next couple of years, the City provided Appellees with approximately 16 million gallons of treated wastewater, and Appellees paid the City in accordance with the contract. But in 2014, the City halted its transfer of water to Appellees on the basis that the water did not meet the minimum standards of quality set by the State of Texas. The contract was subject to the wastewater quality standards set by the State of Texas.

Appellees sued the City for breach of contract. According to Appellees, the lack of water for irrigation forced them to transform the golf course from an 18-hole course to a 9-hole course, and membership and profits declined as a result.

The City filed a plea to the jurisdiction and a motion for summary judgment asserting that it was immune from suit and that the City had not waived immunity to be sued. The City specifically asserted that it had engaged in a governmental function when it entered into the contract with Tin Cup. Appellees responded and

argued that immunity did not apply because the City's sale of wastewater to Tin Cup represented a proprietary, rather than a governmental, function. Alternatively, Appellees asserted that the City waived its immunity, pursuant to the Texas Local Government Contract Claims Act,[1] by entering into the contract.

*Analysis*

In three issues on appeal, the City asserts that it is immune from suit because (1) the contract involved the City's performance of a governmental function, (2) the contract is not subject to the Contract Claims Act, and (3) Appellees have not sought the type of damages for which immunity is waived by the Contract Claims Act. The City contends that, because it is immune from suit, the trial court erred by denying the City's plea to the jurisdiction and motion for summary judgment.

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject-matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *see also Blue*, 34 S.W.3d at 554 (absence of subject-matter jurisdiction may be challenged by a motion for summary judgment). Subject-matter jurisdiction is a question of law. *Miranda*, 133 S.W.3d at 226. Therefore, we apply a de novo standard of review to a trial court's ruling on a plea to the jurisdiction. *Id.*

"A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). Here, the City challenged the existence of jurisdictional facts. When a governmental unit challenges the existence of jurisdictional facts, we consider the relevant evidence submitted. *Miranda*, 133 S.W.3d at 227. The

---

[1] Tex. Loc. Gov't Code Ann. §§ 271.151–.160 (West 2016).

standard of review mirrors that of a traditional motion for summary judgment. *Clark*, 544 S.W.3d at 771 (citing *Miranda*, 133 S.W.3d at 225–26).

Municipalities may exercise their broad powers through proprietary and governmental roles. *Gates v. City of Dallas*, 704 S.W.2d 737, 738 (Tex. 1986). The governmental/proprietary dichotomy, which stems from the common law, "recognizes that immunity protects a governmental unit from suits based on its performance of a governmental function but not a proprietary function." *Wasson Interests, Ltd. v. City of Jacksonville*, No. 17-0198, 2018 WL 4838309, at *2, 3 (Tex. Oct. 5, 2018) (*Wasson II*) (citing *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 430 (Tex. 2016) (*Wasson I*)). Thus, we must determine whether the City acted in its governmental or proprietary capacity when it entered the contract with Tin Cup to deliver treated wastewater. *See Wasson II*, 2018 WL 4838309, at *5. The focus of this inquiry is on "whether the municipality was engaged in a governmental or proprietary function when it entered the contract, not when it allegedly breached." *Id.*

To determine the boundaries of governmental immunity in the contract-claims context, we must consider the relevant statutory provisions as well as the common law. *Id.* at *3. We are to "aid our inquiry" by looking to the definitions for governmental and proprietary functions that the legislature set forth in the Texas Tort Claims Act. *Id.* (quoting *Wasson I*, 489 S.W.3d at 439); *see* CIV. PRAC. & REM. ch. 101 (West 2011 & Supp. 2018) (Texas Tort Claims Act). Under the TTCA, governmental functions are defined as "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." CIV. PRAC. & REM. § 101.0215(a). The TTCA provides a non-exhaustive list of thirty-six functions that are deemed to be governmental functions. *Id.*; *Wasson I*, 489 S.W.3d at 439. Specifically included in that list are "sanitary and storm sewers,"

"waterworks," and "water and sewer service." CIV. PRAC. & REM. § 101.0215(a)(9), (11), (32). Proprietary functions, on the other hand, are defined in the TTCA as "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." *Id.* § 101.0215(b). Proprietary functions include "the operation and maintenance of a public utility," "amusements owned and operated by the municipality," and "any activity that is abnormally dangerous or ultrahazardous." *Id.* A proprietary action may be treated as a governmental action if the proprietary action is "essential" to a governmental action. *Wasson II*, 2018 WL 4838309, at *7.

If an action is not expressly mentioned in Section 101.0215, courts must apply the general definitions of governmental and proprietary functions. *Wasson II*, 2018 WL 4838309, at *5. In doing so, courts are to consider (1) whether the City's act of entering into the contract was mandatory or discretionary, (2) whether the contract was intended to benefit the general public or the City's residents, (3) whether the City was acting on the State's behalf or its own behalf, and (4) whether the City's act of entering into the contract "was sufficiently related to a governmental function to render the act governmental even if it would otherwise have been proprietary." *Id.*

Here, the City relies on the inclusion of "sanitary and storm sewers," "waterworks," and "water and sewer service" in the TTCA's list of governmental functions for its assertion that the sale of effluent to Tin Cup was a governmental function. CIV. PRAC. & REM. § 101.0215(a) (9), (11), (32). The City notes that, under the regulatory authority of the Texas Commission on Environmental Quality, it must dispose of its treated wastewater from its wastewater treatment facility and that, by selling the treated wastewater to Tin Cup, it was disposing of its treated wastewater. Recently, but prior to *Wasson II*, the Amarillo Court of Appeals stated that the "disposition of treated effluent from a wastewater treatment plant pursuant

5

to a TCEQ permit is a governmental function." *Davis v. City of Lubbock*, No. 07-16-00080-CV, 2018 WL 736344, at \*4 (Tex. App.—Amarillo Feb. 6, 2018, no pet.) (holding that City of Lubbock's sale of hay to the public was a governmental function because it was "closely related to" TCEQ-permitted activities, specifically the disposal of treated effluent and growing crops). We agree that the disposition of treated effluent is a governmental function.

Although the disposal of effluent *by sale* may not fall expressly within the TTCA's list of governmental functions, the disposal of treated wastewater in some manner is necessary for the operation of a wastewater treatment facility. In other words, disposal of the treated wastewater was essential to the City's operation of its wastewater treatment facility. *See Wasson II*, 2018 WL 4838309, at \*7. The City was performing a key governmental service by operating its wastewater treatment facility and disposing of the treated waste. Moreover, if the sale or delivery of reclaimed water by a local governmental entity were considered by the legislature to be a proprietary action, there would have been no need for the legislature to include the following definition in the Contract Claims Act: "Contract subject to this subchapter means . . . a written contract, including a right of first refusal, regarding the sale or delivery of not less than 1,000 acre-feet of reclaimed water by a local governmental entity intended for industrial use." Loc. Gov't § 271.151(2)(B). For the above reasons, we conclude that the City exercised a governmental function when it contracted to dispose of its treated wastewater/effluent by sale. Accordingly, we sustain the City's first issue.

In its second issue, the City contends that Appellees did not plead and could not have pleaded a valid waiver of governmental immunity under the Contract Claims Act. Specifically, the City asserts that its immunity from suit has not been waived because the contract at issue here was not "subject to" the Contract Claims Act.

6

The Contract Claims Act "waives immunity from contract suits for local governmental entities." *Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cty.*, 449 S.W.3d 98, 106 (Tex. 2014); *see* LOC. GOV'T §§ 271.151–.160. The Contract Claims Act provides:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into *a contract subject to this subchapter* waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

LOC. GOV'T § 271.152 (emphasis added). A "contract subject to this subchapter" is defined in the Contract Claims Act as:

> (A) a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity; or
>
> (B) a written contract, including a right of first refusal, regarding the sale or delivery of not less than 1,000 acre-feet of reclaimed water by a local governmental entity intended for industrial use.

*Id.* § 271.151(2).

Appellees asserted that the City waived immunity because its contract with the City was a contract subject to Section 271.151. Specifically, Appellees claimed that the contract fell within Section 271.151(2)(B). We disagree with Appellees' contention. The legislature added subsection (B) to Section 271.151(2) by amendment in 2013. Act of May 24, 2013, 83d Leg., R.S., ch. 1138, § 2, 2013 Tex. Gen. Laws 2756, 2757–58 (codified at LOC. GOV'T § 271.151(2)); *Lubbock Cty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 301 n.5 (Tex. 2014). The amendment to Section 271.151(2) applies "to a claim that arises under a contract executed on or after" June 14, 2013. Act of May 24, 2013, 83d Leg., R.S., ch. 1138, § 4(c), 2013 Tex. Gen. Laws 2756, 2758. If a claim arises under a contract executed before June 14, 2013, it is governed by the law in effect on the

date the contract was executed. *Id.* at § 5. The contract between the City and Appellees was executed in 2011, before the effective date of Section 271.151(2)(B). *Id.* Therefore, subsection (B) is not at issue in this case. *See Lubbock Cty.*, 442 S.W.3d at 301 n.5. Accordingly, we apply the law in effect at the time the contract was executed in 2011.

In 2011, the definition of a "contract subject to this subchapter" included only the language now found in Section 271.151(2)(A): "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *See* Act of May 20, 2005, 79th Leg., R.S., ch. 604, § 2, sec. 271.151, 2005 Tex. Gen. Laws 1548, 1548 (codified at Loc. Gov't § 271.151); *see also* Loc. Gov't § 271.151(2)(A). The parties agree that the contract does not fall within subsection (A). Appellees note that "[t]he Contract was not intended to provide a 'service' to the City or the general public; it was intended to provide a service to Tin Cup."

We agree with the parties that the contract is not an "agreement for providing goods or services to" the City as provided for in Section 271.151(2)(A). There were no "services" being provided to the City by Appellees, and to the extent that any benefits may have been conferred on the City, those benefits were indirect and attenuated. *See, e.g.*, *Berkman v. City of Keene*, 311 S.W.3d 523, 527 (Tex. App.— Waco 2009, pet. denied) (filing of an annexation petition in exchange for city furnishing water and sewer services was an "indirect" or "attenuated" benefit). The contract at issue here is not "subject to" the Contract Claims Act. Accordingly, we sustain the City's second issue.

In its third issue, the City asserts that, to the extent that its contract with Appellees is subject to the Contract Claims Act, the waiver of immunity is limited to certain damages. *See* Loc. Gov't § 271.153. Because the contract at issue here

8

is not subject to the Contract Claims Act, we need not address the merits of the City's third issue.

## *This Court's Ruling*

We reverse the orders of the trial court, and we render judgment dismissing Appellees' suit against the City of Merkel.

JOHN M. BAILEY
CHIEF JUSTICE

October 18, 2018

Panel consists of: Bailey, C.J.;
Gray, C.J., 10th Court of Appeals[2];
and Wright, S.C.J.[3]

Willson, J., not participating.

---

[2]Tom Gray, Chief Justice, Court of Appeals, 10th District of Texas at Waco, sitting by assignment to the 11th Court of Appeals.

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.