Opinion filed July 25, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00105-CV
_____

### AMANDA BELLAMY, Appellant

### V.

### ALLEGIANCE BENEFIT PLAN MANAGEMENT, INC., Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause CV58440**

## O P I N I O N

This appeal concerns (1) the propriety of the trial court's reconsideration, and subsequent grant, of the plea to the jurisdiction filed by Appellee, Allegiance Benefit Plan Management, Inc. (Allegiance), (2) the application of the principle of derivative governmental immunity, and (3) whether the trial court erred when it dismissed the

causes of action made against Allegiance by Appellant, Amanda Bellamy, as alleged in her pleadings.[1]

In the underlying action, Bellamy sued Allegiance and others (who are not parties to this appeal) for damages arising from the City of Midland's (the City) denial of the healthcare claim that she submitted to the City under the City's self-funded insurance plan (the Plan).[2] Allegiance answered and filed its plea to the jurisdiction contending that the trial court did not have subject-matter jurisdiction over Bellamy's asserted causes of action because (1) Bellamy's pleadings affirmatively negated the trial court's subject-matter jurisdiction to hear and decide the case, and (2) the jurisdictional evidence established that Allegiance is immune from liability and suit because it operated and functioned as a third-party administrator to the Plan. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). After a hearing, the trial court denied Allegiance's plea. Allegiance filed a motion to reconsider, and, upon reconsideration, the trial court subsequently granted Allegiance's plea and dismissed the causes of action that Bellamy asserted against Allegiance with prejudice.

Bellamy raises two issues on appeal: (1) the trial court abused its discretion when it reconsidered its previous denial of Allegiance's plea; and (2) the trial court

---

[1]In her pleadings, Bellamy asserted causes of action against Allegiance for breach of contract, quantum meruit, promissory estoppel, violations of the Texas Tort Claims Act, common law fraud, breach of fiduciary duty, violations of the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA), negligence, and violations of the Texas Insurance Code, all of which she alleged resulted from Allegiance's wrongful denial of coverage for the medical services she sought that Allegiance had determined to be "not medically necessary." *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151–.153 (West 2016); TEX. INS. CODE ANN. §§ 541.003, 541.060, 542.003 (West 2022); TEX. CIV. PRAC. & REM. CODE ANN. §§ 38.001 (West Supp. 2023), 41.003(a) (West 2015), 101.001–.109 (West 2019).

[2]In her original petition, Bellamy filed suit against Allegiance Care Management, LLC., the City of Midland, and the City of Midland Administrative Services, none of whom are parties to this appeal. On August 11, 2022, Bellamy filed her first amended petition and joined Allegiance as a party to her underlying suit. Bellamy subsequently nonsuited without prejudice the City of Midland Administrative Services and Allegiance Care Management, LLC., on August 12, 2022, and August 22, 2022, respectively.

erred when it subsequently granted Allegiance's plea because Allegiance is not immune from suit as a third-party administrator to the Plan. We affirm.

## I. *Factual Background*

The City of Midland operates the Plan for its eligible employees and their eligible dependents. The terms of the Plan are outlined in the "Summary Plan Description" document that is contained in the City's medical benefits booklet. The City is the "Plan Sponsor" and is vested with the exclusive authority to make final claim and coverage determinations. The Plan, the "Summary Plan Description," and the "Administrative Services Agreement" that was executed by and between the City and Allegiance, designate Allegiance as the "Plan Supervisor" and describe Allegiance's role within the Plan—to process insurance claims and to assist in the development, maintenance, and administration of the Plan.

The duties that the City delegated to Allegiance are ministerial in nature—akin to how a third-party administrator operates. The "Administrative Services Agreement" states that the City "wishes to contract with an independent third-party administrator to perform certain administrative services with respect to the Plan" and repeatedly refers to Allegiance—who is a licensed third-party administrator—as a "TPA."

At the time her healthcare claim was submitted, Bellamy participated in and was insured under the Plan.[3] In her pleadings, Bellamy alleges that she has experienced "pain on her left side, specifically the neck and shoulder" which prompted her to consult with a physician regarding the cause of her symptoms. Bellamy alleges that her chosen physician recommended that she undergo surgery,

---

[3]At the hearing on the pleas to the jurisdiction filed by the City and Allegiance, the trial court questioned counsel for the parties as to whether Bellamy, at the time her claim was submitted, was covered by her husband's COBRA health coverage under the Plan. Allegiance's trial counsel stated that he "[did not] believe a coverage . . . was denied based on the availability of coverage, [but the decision to deny] was based on the medical necessity of the procedure." On appeal, neither party contests that Bellamy was covered by the Plan.

the purpose of which was two-fold: (1) to alleviate her symptoms and (2) to remove the surgical hardware that had been inserted in her spine from a prior surgery. Pursuant to the Plan's requirements, Bellamy filed a claim and requested that the Plan cover the costs associated with this surgery. According to Bellamy, around September 21, 2020, she was notified by Allegiance that her claim was denied, based on the determination that the recommended surgery was "not medically necessary." Bellamy appealed the denial of her claim to a "First Level of Benefit Determination Review," as described in the Plan; however, on December 22, 2020, her claim was denied at this stage of the process.

After this denial, Bellamy sought a "Second Level of Benefit Determination Review" or a "second level appeal" to the Director of Administrative Services of the City, which also included a review by an independent company, Advanced Medical Reviews, to determine whether the surgical procedure recommended by her chosen physician was "medically necessary." After conducting its independent review, Advanced Medical Reviews determined that the recommended surgery was not medically necessary because it was deemed to be "[e]xperimental/[i]nvestigational" as defined by the Plan. On March 24, 2021, the Director of Administrative Services of the City sent a letter to Bellamy notifying her that after a "second level appeal" consideration, her claim and request for coverage and benefits for the recommended surgery was, again, denied. In this letter, Bellamy was also informed that she could pursue an independent external medical review of the denial determinations under the terms of the Plan, but she did not do so.

On August 11, 2022, Appellant filed her first amended petition and joined Allegiance and the City as defendants to her suit. On August 19, 2022, Allegiance filed its original answer to Bellamy's first amended petition and its plea to the jurisdiction; on August 25, 2022, the City filed its plea to the jurisdiction. The trial court scheduled a hearing for both pleas for September 22, 2022.

4

The day before the hearing, Bellamy filed her second amended petition—which included five additional causes of action that she asserted against the City and Allegiance—and a response to both pleas. On the day of the hearing, multiple documents were filed by the parties, including (1) the City's supplemental plea; (2) Bellamy's third amended petition; (3) Allegiance's joinder to the City's original and supplemental pleas; (4) Allegiance's reply brief to Bellamy's response to its plea; and (5) the City's second supplemental plea. The trial court then held the hearing on the pleas later that day. Following the hearing, the City filed supplemental evidence in support of its plea.

On October 5, 2022, the trial court signed its order granting the City's plea and denying Allegiance's plea. Following the trial court's rulings, the City filed a motion to sever, which the trial court granted, so that the trial court's written ruling in the City's favor could become final and appealable. In light of the severance, the only remaining parties to the underlying suit were Bellamy and Allegiance. On January 20, 2023, Allegiance filed a motion for reconsideration requesting that the trial court reconsider its previous denial of Allegiance's plea. The trial court set a hearing on Allegiance's motion for March 2, 2023; however, on February 8, 2023, the trial court signed its order granting Allegiance's motion for reconsideration and plea to the jurisdiction. This appeal followed.

## II. *Standards of Review and Applicable Law*

### A. *Motion for Reconsideration*

We review a trial court's decision to grant or deny a motion for reconsideration under an abuse of discretion standard. *Tex. Petroleum Land Mgmt., LLC v. McMillan*, 641 S.W.3d 831, 850 (Tex. App.—Eastland 2022, no pet.); *Methodist Hosps. of Dallas v. Corp. Communicators, Inc.*, 806 S.W.2d 879, 883 (Tex. App.—Dallas 1991, writ denied); *see also Udcoff v. Castille*, No. 11-04-00274-CV, 2006 WL 2075244, at *9 (Tex. App.—Eastland July 27, 2006, no pet.)

5

(mem. op.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without regard to guiding legal principles in reaching its ruling, or if its ruling is not supported by legally or factually sufficient evidence. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Kendrick v. Garcia*, 171 S.W.3d 698, 703 (Tex. App.—Eastland 2005, pet. denied) (citing *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992)).

B. *Plea to the Jurisdiction*

Before a trial court may decide a case, it is essential that the trial court possess subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). A plea to the jurisdiction is a dilatory plea and a proper method by which to challenge a trial court's subject-matter jurisdiction. *Id.* at 554. Whether a trial court has subject-matter jurisdiction to decide a case is a question of law that we review de novo. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018) (citing *Miranda*, 133 S.W.3d at 226); *Ector Cnty. v. Breedlove*, 168 S.W.3d 864, 865 (Tex. App.—Eastland 2004, no pet.).

The purpose of a plea to the jurisdiction is to defeat a pleaded cause of action without reaching the merits. *Blue*, 34 S.W.3d at 554. A plea to the jurisdiction can take two forms: (1) a challenge to the plaintiff's pleadings regarding the allegations of jurisdictional facts, or (2) an evidentiary challenge to the existence of jurisdictional facts. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 226–27. Thus, the plea may challenge the pleadings, the existence of jurisdictional facts, or both.[4] *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *City of Merkel v. Copeland*, 561 S.W.3d 720, 723 (Tex. App.—Eastland 2018, pet. denied).

---

[4]In its plea, Allegiance challenged both, namely that: (1) the state of Bellamy's pleadings regarding her allegations of jurisdictional facts, and (2) the existence of jurisdictional facts. We note that the trial court, in its order granting Allegiance's plea, did not specify which challenged jurisdictional ground alleged by Allegiance that it granted, nor did the trial court articulate its reasons for granting the plea.

When the plea challenges the plaintiff's pleadings, we must determine if the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear and decide the case; in this regard, the plaintiff bears the burden to allege such facts that affirmatively demonstrate the trial court's subject-matter jurisdiction. *Tex. Dep't of Crim. Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020); *Miranda*, 133 S.W.3d at 226. Therefore, we must accept as true all factual allegations in the plaintiff's pleadings, construe them liberally in the pleader's favor, and look to the pleader's intent. *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015); *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Tex. Mun. League Intergovernmental Risk Pool v. City of Abilene*, 551 S.W.3d 337, 342–43 (Tex. App.—Eastland 2018, pet. dism'd). If the allegations create a fact question regarding jurisdiction, a trial court may not grant the plea because the factfinder must resolve the fact issue. *Rangel*, 595 S.W.3d at 205; *Tex. Ass'n of Sch. Bds. Risk Mgmt. Fund v. Colorado Indep. Sch. Dist.*, 660 S.W.3d 767, 771 (Tex. App.—Eastland 2023, no pet.). But if the pleader fails to raise a fact question on the jurisdictional issue, the trial court may rule on the plea as a matter of law. *Rangel*, 595 S.W.3d at 205.

On the other hand, when the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim. *Clark*, 544 S.W.3d at 770–71 (citing *Blue*, 34 S.W.3d at 555); *Weatherford Int'l, LLC v. City of Midland*, 652 S.W.3d 905, 912 (Tex. App.—Eastland 2022, pet. denied). "In such cases, the standard of review mirrors that of a traditional summary judgment." *Clark*, 544 S.W.3d at 771 (citing *Miranda*, 133 S.W.3d at 225–26).

Thus, if the plaintiff's factual allegations are challenged with supporting evidence that is necessary to the consideration of the plea, the plaintiff must raise at

least a genuine issue of material fact to overcome the challenge to the trial court's subject-matter jurisdiction and avoid dismissal. *Id.* (citing *Miranda*, 133 S.W.3d at 221). "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Id.* (citing *Miranda*, 133 S.W.3d at 228). We cannot, however, disregard evidence that is necessary to show context; nor can we disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 811–12, 822–23, 827 (Tex. 2005)).

C. *Governmental Immunity*

Sovereign immunity and its counterpart, governmental immunity, exist to protect the State, its agencies, and its political subdivisions from lawsuits and liability for money damages. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Governmental immunity is derived from the State's sovereign immunity. Therefore, the State's political subdivisions, which include units of local government, such as the City, are afforded the same immunity protections as the State. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011).

Governmental immunity embraces two concepts: immunity from suit and immunity from liability. *Reata*, 197 S.W.3d at 374; *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Governmental immunity deprives a trial court of subject-matter jurisdiction for actions in which certain governmental units have been sued unless the unit has expressly consented to suit. *Reata*, 197 S.W.3d at 374; *Miranda*, 133 S.W.3d at 224; *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). On the other hand, immunity from liability is an affirmative defense, not a matter of subject-matter jurisdiction; however, this immunity must also be waived. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *Miranda*, 133

8

S.W.3d at 224. Because immunity from suit defeats a trial court's subject-matter jurisdiction, it is properly raised in a plea to the jurisdiction. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 392 (Tex. 2022); *Miranda*, 133 S.W.3d at 225–26.

By challenging a governmental unit's assertion of immunity, a plaintiff may overcome a governmental unit's immunity defense only if the plaintiff demonstrates that the legislature has clearly and unambiguously waived the unit's immunity by statute. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023); *Dohlen*, 643 S.W.3d at 392 (citing *Tooke*, 197 S.W.3d at 330). Without such a waiver, the trial court lacks subject-matter jurisdiction to proceed, and the causes of action alleged against the governmental unit are barred. *Rattray*, 662 S.W.3d at 865. Accordingly, the trial court must dismiss the suit if the plaintiff cannot satisfy the burden of affirmatively demonstrating the trial court's subject-matter jurisdiction to hear and decide the case by showing that the causes of action asserted by the plaintiff fall within a statutory waiver of immunity. *Id.*

For purposes of the matter before us, it is significant that governmental immunity may also apply and extend to protect private companies who contract with the State or other governmental entities under certain circumstances. *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 124 (Tex. 2015) (quoting *K.D.F. v. Rex*, 878 S.W.2d 589, 597 (Tex. 1994) (holding that a private company that "'operate[d] solely upon the direction of [the system]' and 'exercise[d] no discretion in its activities' was indistinguishable from the system, such that 'a lawsuit against one [wa]s a lawsuit against the other.'")); *see Foster v. Tchr. Ret. Sys.*, 273 S.W.3d 883, 889–90 (Tex. App.—Austin 2008, no pet.) (extending immunity to Aetna for claims that arose from the denial of health coverage based on the relationship between the state agency and Aetna, who was the administrator of the state agency's health plan). Thus, a private company may be protected from liability and suit under the principle of derivative governmental immunity unless (1) the legislature has expressly and

unambiguously waived, as to a plaintiff's asserted causes of action, the immunity of the governmental entity that the private company has contracted with or (2) the private company's actions on behalf of a governmental entity do not support an extension of immunity. *See Dohlen*, 643 S.W.3d at 392 (citing *Tooke*, 197 S.W.3d at 330); *Olivares*, 461 S.W.3d at 124; *Foster*, 273 S.W.3d at 889–90; *see also Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019).

### III. *Analysis*

Bellamy raises two issues on appeal: (1) the trial court abused its discretion when it reconsidered its denial of, and subsequently granted, Alliance's plea because Allegiance's motion to reconsider was filed more than thirty days after the trial court signed its order denying Allegiance's plea; and (2) the trial court erred when it granted Allegiance's plea because Allegiance is not immune from suit as a third-party administrator to the Plan.

### A. *The Trial Court's Reconsideration of its Interlocutory Ruling*

In Bellamy's first issue, she argues that the trial court abused its discretion when it reconsidered its previous denial of Allegiance's plea and granted Allegiance's motion for reconsideration because, according to her, a motion for reconsideration should be treated the same procedurally as a motion for new trial or a motion to modify a judgment. As such, and in that context, Bellamy avers that Allegiance was required to file its motion for reconsideration within thirty days after the trial court signed its order denying Allegiance's plea. Consequently, Allegiance's motion for reconsideration, Bellamy argues, was "untimely" because it was filed on January 20, 2023—more than thirty days after the trial court denied Allegiance's plea by written order on October 5, 2022. Additionally, Bellamy argues that Allegiance's motion for reconsideration did not include "new evidence," which she claims was necessary for the trial court to extend the thirty-day filing

10

deadline that purportedly applies to the filing of Allegiance's motion for reconsideration.

Generally, "a trial court has plenary jurisdiction to reconsider its interlocutory rulings . . . and [it] retains that [jurisdiction] until a final judgment or order is entered in the cause and the [judgment or order] becomes final." *White v. Baptist St. Anthony's Hosp.*, 188 S.W.3d 373, 374–75 (Tex. App.—Amarillo 2006, pet. denied) (regarding a motion to dismiss); *see McMillan*, 641 S.W.3d at 850 (affirming the trial court's grant of a motion for reconsideration and holding that a trial court may reconsider issues previously adjudicated until the trial court loses plenary power over those issues); *see also Solcius, LLC v. Meraz*, No. 08-22-00146-CV, 2023 WL 2261414, at *2 n.4 (Tex. App.—El Paso Feb. 27, 2023, no pet.) (mem. op.). We are unaware of any opinion, rule of procedure, or other authority, and Bellamy has not pointed to or directed us to any, that requires that a motion for reconsideration must be filed within thirty days of the trial court's signing of an *interlocutory* order, as Bellamy suggests. Therefore, and in this context, we hold that such a requirement or deadline does not exist, and we decline to impose one.

Here, the trial court's October 5, 2022 order, which recites its denial of Allegiance's plea, is an interlocutory ruling upon which there is no finality.[5] Thus, the trial court had the discretion and the authority to reconsider its previous ruling that denied Allegiance's plea until it no longer retained plenary power over the issue. *In re Tex. Conf. of Seventh-Day Adventists*, 652 S.W.3d 136, 142 (Tex. App.—Fort Worth 2022, no pet.); *McMillan*, 641 S.W.3d at 850.

---

[5]Although Allegiance had the option and may have considered filing an interlocutory appeal from the trial court's initial denial of its plea, its decision not to do so did not deprive the trial court of jurisdiction and the authority to reconsider its interlocutory rulings. *See Bonsmara Nat. Beef Co., LLC v. Hart of Texas Cattle Feeders, LLC*, 603 S.W.3d 385, 393–94 (Tex. 2020) (citing *State ex. rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 325–26, 331 (Tex. 2002)); *see also* CIV. PRAC. & REM. § 51.014(a)(8).

The cases that Bellamy cites in support of her argument are readily distinguishable and inapplicable to the case before us. *See, e.g.*, *Padilla v. LaFrance*, 907 S.W.2d 454, 458–59 (Tex. 1995) (holding that because the motion for reconsideration was filed before the trial court ordered the counterclaim to be severed, the motion for reconsideration "qualifie[d] as a premature motion to modify the judgment" and should be treated as a modification to the judgment or a motion for new trial); *Fox v. Wardy*, 318 S.W.3d 449, 451 n.1 (Tex. App.—El Paso 2010, pet. denied) (holding that the substance of a pro se litigant's motion for reconsideration, when construed liberally by the trial court, was a motion for new trial); *Adams v. Ross*, No. 01-15-00315-CV, 2016 WL 4128335, at *2 (Tex. App.—Houston [1st Dist.] Aug. 2, 2016, no pet.) (mem. op.) (holding that courts generally "treat a motion for reconsideration that seeks modification or reversal of a *judgment* as a motion for new trial"). In this case, unlike the cases upon which Bellamy relies, Allegiance's motion for reconsideration only addressed and sought the trial court's reconsideration of its previous *interlocutory* ruling and *denial* of Allegiance's plea; the motion did not seek to modify or vacate a *final judgment*. This is a significant distinction.

Bellamy further argues that Allegiance's motion for reconsideration was deficient because "no new evidence" was presented with it. However, there is no requirement that a movant's motion for reconsideration be supported by or based on "new evidence." As Bellamy concedes in her brief, because Allegiance did not submit any new evidence with its motion for reconsideration, this motion cannot be construed as a motion for new trial based on newly discovered evidence. *Hermosillo v. K. Hovnanian Homes-DFW, LLC*, 329 S.W.3d 181, 183–85 (Tex. App.—Dallas 2010, no pet.).

We conclude that the trial court did not abuse its discretion when it reconsidered its previous interlocutory ruling and order that denied Allegiance's plea

to the jurisdiction because it retained the plenary power to do so until the judgment that involved and affected Bellamy and Allegiance became final. *See McMillan*, 641 S.W.3d at 850; *White*, 188 S.W.3d at 374–75. Here, the trial court did not sign a final judgment when it initially denied Allegiance's plea. As such, in this reconsideration context, the element of "finality" did not exist. Until "finality" attached, the deadlines advanced by Bellamy as it pertains to Allegiance's motion for reconsideration would not be triggered.

Accordingly, we overrule Appellant's first issue on appeal.

B. *Allegiance's Plea to the Jurisdiction*

In her second issue, Bellamy argues that: (1) the trial court erred when it granted Allegiance's plea to the jurisdiction because Allegiance was not the administrator of the Plan and therefore cannot rely on and is not afforded the same immunity protections as a governmental entity (here, the City); and (2) the trial court erred when it dismissed with prejudice the causes of action that she asserted against Allegiance because the trial court failed to provide her an opportunity to amend her pleadings to cure any deficiencies.[6]

1. *Does Governmental Immunity Apply to Allegiance?*

Although Bellamy contends that the trial court erred when it granted Allegiance's plea, she does not argue on appeal that governmental immunity was waived by either the City or Allegiance as to the causes of action that she has asserted

---

[6]Bellamy also argues that because "[Allegiance] filed or submitted to [Bellamy] a [motion for] summary judgment in this case," which was an independent motion and did not incorporate Allegiance's plea, this constitutes "evidence" that Allegiance "knew" it was not entitled to rely on the defense of governmental immunity. However, Bellamy does not cite to any authority to support this argument on appeal. Further, although Bellamy refers to a motion for summary judgment filed by a former defendant to the underlying suit, Allegiance Care Management, LLC., as "evidence" of Allegiance's purported knowledge, she fails to cite to any authority or explain how this relates to Allegiance's plea or how this "knowledge" affects Allegiance's immunity from suit as a third-party administrator. Because this argument is devoid of any citations to appropriate authority, it is waived; therefore, we will not address it. *See* TEX. R. APP. P. 38.1(i).

against each party in the underlying suit.  Instead, Bellamy only argues that the trial court erred in extending the shield of governmental immunity to Allegiance because (1) Allegiance is not the "Plan Administrator" of the Plan, and (2) the question of "whether [Allegiance] is an Administrator should be a question of fact to be determined by a jury."[7]  Because the trial court found that the City is immune from liability and suit, a finding that Bellamy has not challenged, we must look to the facts alleged in Bellamy's pleadings and the jurisdictional evidence presented to the trial court to determine whether the protections of governmental immunity for which the City enjoys also extends to and protects Allegiance as a third-party administrator to the Plan.  *Rangel*, 595 S.W.3d at 205.

The City is a unit of local government and thus is immune from suit unless such immunity has been expressly and unambiguously waived by the legislature.  *See* LOC. GOV'T § 271.151(3).  However, a unit of local government does not waive its immunity from suit simply because it establishes, as the City did here, a self-funded insurance plan.  *See* TEX. GOV'T CODE ANN. §§ 2259.001, .002, .037 (West 2016).  In this case, it is undisputed that the City funded the Plan and that it contracted with Allegiance to be the "Plan Supervisor" or the Plan's third-party administrator.  As such, the City did not waive its immunity from suit.

---

[7]In its plea, Allegiance contends that (1) Bellamy's pleadings affirmatively negate the trial court's subject-matter jurisdiction to decide this case, and (2) the jurisdictional evidence establishes that it is immune from liability and suit because it operated as a third-party administrator to the Plan.  *See Miranda*, 133 S.W.3d at 226–27.  Within both arguments, Allegiance contends that because it is a "third-party benefit plan administrator" to the Plan, and because Bellamy failed to allege any independent, wrongful conduct on behalf of Allegiance or its employees, it is protected by the City's governmental immunity.  *See Olivares*, 461 S.W.3d at 126–27 (discussing *Foster*, 273 S.W.3d at 888–89).  In further support of its plea, Allegiance cites to several opinions that hold that administrators of self-funded governmental plans enjoy the same immunity from liability and suit as the governmental entity for which they contract with.  Importantly, Bellamy concedes on appeal that third-party administrators for self-funded government health plans, including municipal plans, are immune from liability and suit.

Because of its relationship with the City, Allegiance argues that it is entitled to assert and rely on the principle of derivative governmental immunity. In this context, Allegiance posits, and Bellamy concedes, that Texas courts have uniformly held that a private company acting in the role as a third-party administrator to an insurance program that is funded by the State or another governmental entity is, like the governmental entity for which it contracts, immune from liability and suit. *See Foster*, 273 S.W.3d at 885–90 (extending immunity to Aetna Health Management, LLC as a third-party administrator); *see also Stegall v. TML Multistate Intergovernmental Emp. Benefits Pool, Inc.*, No. 05-18-00239-CV, 2019 WL 4855226, at *5 (Tex. App.—Dallas Oct. 2, 2019, no pet.) (mem. op.) (extending immunity to UMR, Inc. as an administrator for the TML Multistate Intergovernmental Employee Benefits Pool, Inc.'s intergovernmental self-insurance risk pool); *United Healthcare Choice Plus Plan for City of Austin Emps. v. Lesniak*, No. 03-15-00309-CV, 2015 WL 7951630, at *2–3 (Tex. App.—Austin Dec. 1, 2015, pet. denied) (mem. op.) (extending immunity to United HealthCare Services, Inc. as an administrator of the City's self-funded health plan); *Humana Ins. Co. v. Mueller*, No. 04-14-00752-CV, 2015 WL 1938657, at *2, 5 (Tex. App.—San Antonio Apr. 29, 2015, pet. denied) (mem. op.) (extending immunity to Humana, who was the "Plan Manager" of the City of San Antonio Housing Authority's self-funded health care plan); *see also McAllen Anesthesia Consultants*, *P.A. v. United Healthcare Servs., Inc.*, No. 7:14-CV-913, 2015 WL 9257154, at *8 (S.D. Tex. Dec. 14, 2015) (extending immunity to the third-party administrator of the Employees Retirement System of Texas's (ERS) health insurance plan because final decisions on benefit payments rested with ERS). Simply put, in circumstances such as these, courts have held that the governmental unit's immunity protections extend to and may be asserted by the third-party administrator that is retained to supervise the unit's self-funded insurance plan. This is so because a third-party administrator's

entitlement to immunity is "derived" from the governmental unit's assertion of immunity. We agree with this rationale.

The circumstances before us are similar to those in *Foster*. In *Foster*, a retired teacher sued the Teachers Retirement System of Texas (TRS), a state agency, and Aetna, a private company retained by TRS to act in the capacity as the administer of TRS's insurance plan, for breach of contract, breach of the duty of good faith and fair dealing, violations of the insurance code, and violations of the DTPA, after Aetna denied the retired teacher's claim for health benefits. *See Foster*, 273 S.W.3d at 885, 889. The Third Court of Appeals concluded that the legislature had not waived TRS's immunity from the retired teacher's suit. *Id.* at 888. The court, in considering whether Aetna, as a private entity, was similarly protected and immune from suit under the doctrine of sovereign immunity, held that Aetna was also immune from suit because "Aetna simply provide[d] administrative services to facilitate the provision of health care to [covered] retirees." *Id.* at 888–90.

In concluding that Aetna was immune from suit as a third-party plan administrator, the court in *Foster* looked to Aetna's contract with TRS, which provided that (1) the insurance plan was fully funded by the State, (2) Aetna had no financial stake in the approval or denial of claims, (3) TRS agreed to indemnify Aetna in connection with its actions and performance under the contract, (4) Aetna had the "discretionary authority" to carry out its specified duties, and (5) Aetna acted as TRS's agent for the benefit of TRS. *Id.*; *see also Olivares*, 461 S.W.3d at 127 (discussing *Foster*). Each of the above particulars was central to the court's immunity determination. Additionally, the court stated that "[t]o hold otherwise would implicate State funds and expose Aetna to liability from which its principal is protected and, more importantly, would undercut the public policy that favors allowing the State to contract with private entities to more efficiently provide services to government employees." *Foster*, 273 S.W.3d at 890. Based on similar

16

facts, other courts have also extended immunity protections to private entities that act in the capacity as a third-party administrator for a governmental unit for the same reasons announced in *Foster*. *See Stegall*, 2019 WL 4855226, at *5; *Lesniak*, 2015 WL 7951630, at *2–3; *Mueller*, 2015 WL 1938657, at *2, 5.

With these principles in mind, we now address whether the facts alleged in Bellamy's pleadings and the jurisdictional evidence presented to the trial court establish that Allegiance is a third-party administrator to the Plan. We begin our analysis by looking to Bellamy's pleadings for "facts that affirmatively demonstrate the [trial] court's jurisdiction to hear [and decide] the cause." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

In her pleadings, Bellamy asserts multiple causes of action against the City and Allegiance, all which arise from the denial of her healthcare claim that she alleges should have been covered by the Plan. In asserting these causes of action, Bellamy—throughout her pleadings—fails to distinguish between the conduct that is attributable to the City and to Allegiance and she frequently refers to the two entities collectively as "defendants." Bellamy also alleges in her pleadings that "[Allegiance] is the 'supervisor' of the plan, [and is responsible for] *processing claims for* the City." (emphasis added). However, while Bellamy does not explicitly allege that Allegiance is either acting on its own volition or independent of the City's direction in the resolution of her healthcare claim, she does *allege* that Allegiance, not the City, was the entity who "made determinations of which claims were accepted and which ones were denied."

Allegiance contends that because Bellamy alleges that the City is a governmental entity, as a consequence Allegiance is entitled to assert and rely on the defense of derivative governmental immunity; therefore, her pleadings affirmatively negate the trial court's subject-matter jurisdiction to hear and decide this case. However, the question that we must address on this point is whether the facts and

17

allegations recited in Bellamy's pleadings, without more, when taken as true and construed liberally in her favor, necessarily demonstrates that Allegiance, as "the Plan Supervisor," is shielded and protected from suit by the City's governmental immunity like the third-party administrator was in *Foster*. *See Foster*, 273 S.W.3d at 888–90. Although we answer "Yes" to this question, based on the circumstances presented here, and because Allegiance also challenged the existence of jurisdictional facts in its plea, we believe it is prudent in this instance to examine the jurisdictional facts and evidence to determine whether the trial court has subject-matter jurisdiction to hear and decide this case. *See Blue*, 34 S.W.3d at 554 ("[B]ecause a court must not act without determining that it has subject-matter jurisdiction to do so, it should [consider] evidence as necessary to determine the issue before proceeding with the case."); *see also Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

As we have said, Bellamy concedes that third-party administrators in this context are generally immune from liability and suit. Nevertheless, in referring to the jurisdictional facts and evidence in the record, Bellamy argues on appeal that Allegiance was not a third-party administrator to the Plan; thus, she contends, it would not be entitled to rely on the defense of derivative governmental immunity, because (1) the cases cited and relied on by Allegiance in its plea pertain to "third party administrators" and are inapplicable here because Allegiance was only the "Plan Supervisor" under the Plan and not the Plan's third-party administrator; (2) the agreements and documents that pertain to Allegiance's role under the Plan contain "contradictory" terms, which should be construed in Bellamy's favor; (3) these contradictory terms are a "question of fact to be determined by a jury" and are not "ministerial" duties; (4) Allegiance did not perform a "ministerial duty" when it denied Bellamy's claim on "multiple occasions;" and (5) other documents refer to Allegiance as a "[c]ase [m]anagement company" or an "insurance company," and

18

show that "Allegiance associates themselves with CIGNA insurance[] [thereby] contradicting [Allegiance's] claim that they are not an insurance company." We note, again, that Bellamy does not cite to any opinion or other authority in support of these arguments. Rather, Bellamy's arguments are nothing more than bare assertions. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

In response, Allegiance contends that Bellamy's arguments fail because (1) the "Administrative Services Agreement" between it and the City consistently refers to Allegiance as a "TPA" or the administrator to the Plan, (2) the distinction that Bellamy claims exists between an "Administrator" and Allegiance's role and title (Plan Supervisor) in this case is an improper attempt to "elevate form over substance" and is not relevant to its immunity defense, and (3) the Plan documents conclusively establish that the responsibilities of Allegiance as the "Plan Supervisor" are analogous to the responsibilities that are routinely delegated to "administrators" and "managers" in these settings, which in turn have resulted in the extension of immunity protection to private entities—third-party administrators—who assist in the administration of a self-funded government insurance program even though the "administrative title"—i.e., manager, administrator, etc.—may vary. *See Foster*, 273 S.W.3d at 888–90; *Stegall*, 2019 WL 4855226, at *5; *Lesniak*, 2015 WL 7951630, at *2–3; *Mueller*, 2015 WL 1938657, at *2, 5. We agree.

In this case, Bellamy sought to recover damages from the City based on its contractual relationship and indemnity agreement with Allegiance. The "plan documents"—the Plan itself and the Administrative Services Agreement—indicate that the responsibilities delegated to Allegiance align with the responsibilities that were delegated and assigned to the "administrators" in the cases cited by Allegiance. It is undisputed that the City created and funded the Plan and solely retained the right

to amend or modify it at any time. Under the terms of the Plan, the "Plan Supervisor"—Allegiance—is employed by the Plan to provide consulting services and perform other functions, including assisting with the processing and payment of claims. In this regard, Allegiance was only authorized to provide ministerial duties, it was not permitted to exercise any discretion over the Plan's assets, and it was not considered to be a fiduciary under state or federal laws or regulations. Further, Allegiance was not responsible for funding the Plan, nor did Allegiance have any financial stake in it.

With reference to the Administrative Services Agreement, the document states that the City intended to contract with an independent third-party administrator—Allegiance—to perform certain administrative services with respect to the Plan. The City delegated only non-discretionary authority to Allegiance to assist in the development, maintenance, and administration of the Plan, and it agreed to indemnify Allegiance against all claims, suits, or liabilities that may arise from Allegiance's performance under the Plan. The Agreement also states, very clearly, that "[t]his Agreement shall not be deemed a contract of insurance under any laws or regulations." While Allegiance was required to assist the City in processing claims under the Plan, the City retained the sole authority to make the final determinations regarding claim coverage, the appeals of denied claims, and the operation and administration of the Plan—which included Bellamy's claim in the present case. Although Allegiance agreed to provide initial claim adjudication recommendations and to assist the City with claim appeals, the Agreement directed Allegiance to refer any doubtful, disputed, or appealed claims to the City for any final decision regarding the processing and adjudication of these claims. Here, contrary to Bellamy's assertion, the record shows that the Director of Administrative Services of the City, not Allegiance, denied Bellamy's claim at the "second level

appeal" stage; Allegiance lacked the independent discretion to deny Bellamy's claim without further review by and authorization from the City.

Although Bellamy is correct in her assertion that the Plan designates Allegiance as the "Plan Supervisor" and the City as "the Plan Sponsor," Bellamy fails to point to any authority to support the argument that the designation of a party's name or title in a contract, alone, defeats that party's defense of governmental immunity. Rather, courts look to the terms of the contract and the claims asserted by the plaintiff to determine whether governmental immunity extends to and protects a private entity that acts in the capacity as an administrator for a governmental unit, thereby shielding the administrator from liability and suit. *See Foster*, 273 S.W.3d at 888–90; *Stegall*, 2019 WL 4855226, at \*5; *Lesniak*, 2015 WL 7951630, at \*2–3; *Mueller*, 2015 WL 1938657, at \*2, 5.

Like *Foster*, the record before us shows that: (1) the Plan is fully-funded by the City; (2) Allegiance had no financial stake in the approval or denial of any claim that was submitted to the City by a plan participant; (3) although Allegiance could interpret the Plan's provisions, it only performed administrative services in the capacity as a third-party administrator—the development, maintenance and administration of the Plan—for and on behalf of the City; (4) Allegiance had "no discretionary authority" to deny claims pursuant to the Administrative Services Agreement, which expressly limits Allegiance's discretionary authority; (5) the City retained sole discretionary authority to interpret and apply the Plan's provisions and to deny the claims that were submitted by plan participants throughout the claims/appeals process; (6) the City agreed to indemnify Allegiance from any claim asserted against it based on its performance under the agreement; (7) as Bellamy's claim was processed, Bellamy did not allege that Allegiance exceeded the scope of the authority delegated to it by the City under the Plan; and (8) in her asserted causes of action, Bellamy effectively seeks to recover from a governmental entity, the City,

who had the ultimate authority over the disposition of these claims. These facts are undisputed and support Allegiance's argument that it is entitled to derivative governmental immunity.

While the Plan documents in this case do not expressly denote Allegiance, albeit by title or otherwise, as the "Plan Administrator," we conclude that Allegiance is the third-party administrator of the Plan. Allegiance's role and authority in administering the Plan is analogous to and consistent with circumstances where courts have extended the protections of governmental immunity to a private entity who acts in the capacity as an administrator for a governmental unit, a concept that we adopt today. *See Foster*, 273 S.W.3d at 889–90; *Stegall*, 2019 WL 4855226 at *5; *Lesniak*, 2015 WL 7951630 at *3; *Mueller*, 2015 WL 1938657 at *5; *see also Olivares*, 461 S.W.3d at 126–27 (discussing *Foster*). Thus, because Allegiance is a third-party administrator to the City's self-funded Plan, and for the public policy reasons articulated in *Foster*, with which we agree, we conclude that Allegiance is afforded the same protections of governmental immunity that the City enjoys and is thus immune from the suit and causes of action that Bellamy has asserted against it. *See Foster*, 273 S.W.3d at 890.

For the reasons stated above, we hold that the trial court did not err when it granted Allegiance's plea to the jurisdiction because (1) Bellamy's pleadings affirmatively negate the trial court's subject-matter jurisdiction to hear and decide this case and (2) Bellamy has failed to raise a genuine issue of material fact to defeat Allegiance's challenge to the trial court's subject-matter jurisdiction. *Clark*, 544 S.W.3d at 770–71.

### 2. *Bellamy's Opportunity to Amend*

Finally, Bellamy argues that the trial court erred when it did not grant her the opportunity to amend her pleadings to cure any deficiencies. In support, she cites to *County of Cameron v. Brown* for the proposition that "if there is a failure in the

[p]leading, and the failure of the pleading can be cured by amending the pleading, the Appellant *must* be given an opportunity to amend." *See Brown*, 80 S.W.3d at 555.

Generally, if a plaintiff does not allege sufficient facts to affirmatively establish a trial court's subject-matter jurisdiction and if any such pleading defects may be cured by a pleading amendment, then a plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. However, if a plaintiff's pleading affirmatively negates the existence of the trial court's subject-matter jurisdiction to hear and decide the case, it is appropriate to deny a plaintiff the opportunity to amend. *Id.* at 227; *Lee v. Gaines Cnty. Sheriff's Off.*, No. 11-18-00173-CV, 2020 WL 4379157, at *5 (Tex. App.—Eastland July 31, 2020, no pet.) (mem. op.).

Moreover, the Texas Supreme Court has held that "[i]f a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action." *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004); *see also Spence v. State*, No. 03-17-00685-CV, 2019 WL 1868841, at *9 (Tex. App.—Austin Apr. 26, 2019, pet. denied) (mem. op.) (concluding that dismissal with prejudice was proper where the appellants filed an amended petition but did not allege facts "that would constitute a waiver of sovereign immunity or made a suggestion that would cure the jurisdictional defect in their pleadings"); *Jones v. City of Port Arthur*, No. 09-14-00442-CV, 2016 WL 6809207, at *6 (Tex. App.—Beaumont Nov. 17, 2016, no pet.) (mem. op.).

Here, Bellamy amended her pleadings several times after the City and Allegiance filed their pleas, including the filing of two amended pleadings on the day before and the day of the scheduled hearing on the pleas. Despite these pleading

amendments, Bellamy's pleadings and the jurisdictional facts in the record demonstrate that the City and Allegiance are immune from liability and suit. Bellamy has failed to plead, and cannot plead, any facts that would show that Allegiance is not entitled to rely on the defense of derivative governmental immunity, and we cannot conceive of any other pleading amendment that Bellamy could now present, or other discoverable information that she might obtain if this case continued, that would cure her inability to establish the trial court's subject-matter jurisdiction to hear and decide this case. Therefore, and based on the circumstances before us, Bellamy's pleading deficiencies cannot be cured and providing her the opportunity to re-plead is not warranted.

We conclude that the trial court did not err when it dismissed Bellamy's suit with prejudice because the trial court lacks subject-matter jurisdiction over Allegiance, and no facts exist, or can be alleged by her, to cure the jurisdictional deficiencies in her pleadings. *See Sykes*, 136 S.W.3d at 639; *see also Pecan Valley Mental Health Mental Retardation Region v. Doe*, 678 S.W.3d 577, 594 (Tex. App.—Eastland 2023, pet. denied).

Accordingly, we overrule Bellamy's second issue on appeal.

IV. *This Court's Ruling*

We affirm the order of the trial court.


W. STACY TROTTER
JUSTICE


July 25, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.